JOHN B. WHITE ET AL. V. THE CITY OF SAGINAW AND WILLIAM C. STEVENS, AUDITOR GENERAL.

*Municipal corporations—Special assessments—Unjust discrimination.*

1. The expense of building a sewer was assessed in equal proportions upon a city and the property benefited. After the city had paid its assessment, and several property-owners had paid theirs in *full*, the assessment was declared invalid by the city council, and a second one ordered on the basis that the property benefited should pay two-thirds of the expenses of the improvement, and that the property-owners who had paid their former assessments *in full* should be exempt from further assessment.

   *Held*, that an assessment which requires such discrimination between the properties of persons taxed cannot be sustained.
2. The remaining points stated in the opinion are omitted, not being concurred in by a *majority* of the judges sitting in the case.

Appeal from Saginaw. (Gage, J.) Argued June 14, 1887. Decided October 6, 1887.

Bill to enjoin the collection of a special sewer assessment. Defendant corporation appeals. Decree granting relief prayed for affirmed. The facts are stated in the opinion.

*Trask & Smith,* for complainants.

*F. E. Emerick,* for appellant.

SHERWOOD, J. The bill in this case was filed to enjoin the collection of a special assessment made by the city of Saginaw to defray the expenses of the construction of a tile sewer on Adams street, between Washington and Hamilton streets, to the west side of Bond street.

The following are the principal grounds set up in the bill upon which the complainants ask relief:

" 1. That bidders for the contract for the construction of the said sewer were required to procure their tile of a particular firm in Rochester, New York, in violation of the spirit of . an ordinance of said city.

" 2. That the charter of said city does not limit the assessment to the amount of benefits conferred by the improvement.

" 3. That a previous assessment to defray the cost of constructing this same sewer had been made, where only one-half the cost of the sewer was assessed to property-owners, and after bill was filed by complainants to restrain same it was abandoned; that, by the terms of the charter in force when the sewer was constructed, the council had discretion to apportion such share of the expense of constructing same as seemed just, and the council did fix one-half the expense as the proper amount to be specially assessed on the property; that by the terms of the new charter two-thirds the cost must be assessed on the property.

" 4. That there is nothing in any of the proceedings which shows upon what basis the tax is assessed.

" 5. That prior to the construction of this sewer it had been customary to assess the whole block each side of a sewer for its construction, and all of the lands of the complainants had been assessed to construct sewers on adjoining streets, but by this assessment only half blocks each side were assessed.

" 6. That the common council has never determined the taxing district as required by charter, but assumed to delegate that duty to the controller.

" 7. That the charter does not limit the taxation to the amounts of benefits received.

" 8. That two-thirds the property assessed does not adjoin Adams street, yet it is assessed just as much as the land that does so adjoin.

" 9. That defendants insist said tax is legal and valid, and a lien on the land, and threaten to sell the same."

There was no appearance by the Auditor General, and the bill was taken as confessed as to him. The other defendant, the city of Saginaw, appeared, and filed an answer, admitting the first and second assessment, and that the first assessment was abandoned. The answer denies all other averments set up in said bill, and avers that the tax was lawfully assessed in all respects, and is a valid lien on said lots. The facts were all agreed upon, and fully appear in the record.

The proceedings are claimed to be void for the following reasons, by counsel in this Court:

" 1. Because such assessment is not limited to benefits conferred.

" 2. Because the charter requires two-thirds paid by property without reference to increase of value caused by the improvement.

" 3. Because bidders were required to make the sewer of tile purchased from one certain firm.

" 4. Because complainants are required to pay two-thirds the cost, while others have had to pay only half the expense.

" 5. Because there is nothing in the proceedings to show the assessment was limited to benefits.

" 6. Because there is nothing which shows on what basis the assessment is made.

" 7. Because no judgment was exercised in making such assessment.

" 8. B.cause while complainants' lands have been taxed to make sewers on other streets, lands of those streets have not been taxed for this sewer.

" 9. Because the common council has assumed to delegate to the controller matters left alone to its discretion.

" 10. Because land remote from the sewer is assessed for more than it is benefited.

" 11. Because land remote, and not adjoining the sewer, is assessed the same amount as land adjoining."

It will not be necessary to consider all the points made by counsel in this case. It is one of those special assessments made by a municipal corporation which require and must be based upon legislative enactment. The authority claimed as authorizing these proceedings is contained in the charter of the city of Saginaw.

Section 1 of this charter[1] gives the common council of the city' power to make local improvements, and authorizes the construction of sewers, one-third of the expense thereof to be paid by the city out of the highway fund, and the remaining two-thirds to be—

" Assessed upon and against such lots, blocks, and premises as in the opinion of the common council are benefited thereby,

[1] Act No 227, Local Acts of 1883, title 3.

and against the owners or occupants thereof, in proportion to the extent that such lots, blocks, and premises, in the opinion of the common council, are respectively benefited by such improvement."

Section 2 provides that, whenever the common council shall determine that it is necessary to construct a sewer, they shall cause detailed plans and specifications to be made of the work to be done, etc., and filed in the office of the controller for inspection. The controller is then to advertise for bids under the direction of the council, and when the bids are received the council is required to let the work to the lowest bidder.

Section 4 is as follows:

"As soon as practicable after making any such contract, the common council shall direct the controller to make out and report to the common council for consideration a special assessment upon and against the lots, blocks, and premises in his opinon benefited by such improvement, and against the owners or occupants thereof, so far as the same may be known, and when any lots, blocks, and premises are unoccupied, and the owners thereof are unknown, they shall be assessed as non-resident."

Section 5 provides that, when such special assessment roll is presented to the council, a day for review shall be fixed, and notice thereof given in some newspaper in the city.

Section 6 requires the common council to examine the roll and take the same in consideration, and they may change or confirm it, and when so confirmed it shall be conclusively deemed an assessment by the common council, and the several amounts assessed against the several lots shall be a personal charge against the owners or occupants, and a lien upon the property assessed, from the time of confirmation.

Section 7 provides for a warrant to be directed to the treasurer of the city, requiring him to make collection of the amounts.

The amounts assessed ranged from $20 to $234 each, and 48 different parties were assessed. The contract was let, and

the work completed, and the city paid one-half· the price of construction.

It appears from the record that another and prior assessment roll was made out, and in which, by resolution of the council, the city was to pay half the expense of the sewer, and did so pay it; but the city was enjoined while making collections, and the old or first roll was abandoned, after which the one in question was made.

The following shows the action taken by the common council in regard to the first roll: June 21, 1881, the following action was taken in the common council:

"To the Honorable Common Council of the City of Saginaw,—

"*Gentlemen:* Your committee on sewers, to whom was referred the petition of Amasa Rust *et al.*, relative to a sewer on Adams street, and the remonstrance relating thereto, report thereon, and recommend the adoption of the following resolution:

"*Resolved*, that the street commissioner is hereby directed to advertise for sealed proposals for constructing a sewer on Adams street, from the west side of Bond street to a point on Adams street about midway between Washington street and Hamilton street, where said sewer is to be connected with a plank sewer, which runs from that point to the Saginaw river; said sewer to be constructed of twelve-inch vitrified tile, and the grade thereof to be under the direction of the city surveyor; the same to be completed within sixty days from the date of the confirmation of the letting, and one-half the expense thereof to be paid by special assessment on the property benefited thereby, and one-half out of the general highway fund, to be levied in 1881. •

"Thos. Doyle,
"E. T. Throop,
"J. H. Benjamin,
"Committee."

July 5, 1881, the council proceeded in this matter as follows:

"*Whereas*, the street commissioner has reported to this council that, as dircted by the council, he advertised for, and on the the fifth day of July 1881, he received, sealed proposals

for constructing a twelve-inch vitrified tile sewer on Adams street, from the west side of Bond street to a point on Adams street about midway between Washington street and Hamilton street, where said sewer is to be connected with a plank sewer, which runs from that point to the Saginaw river; and that Chas. Stoltow & Remer are the lowest bidders therefor.

" *Therefore resolved,* that the said work be, and the same is hereby, let to Chas. Stoltow & Remer at their bid aforesaid, and in conformity to the specifications and plans on file in the controller's office; and the controller is hereby directed to make out and report to this council an assessment against the owners and occupants on the adjacent half blocks on each side of Adams street, to defray one-half the expense of said work."

Subsequently the following resolution was adopted:

" *Whereas,* the controller has reported to this council an assessment roll for the assessment of a special tax for constructing of a sewer on Adams street, from Bond street to a point midway between Washington and Hamilton streets, and the same having been taken into consideration.

" *Therefore resolved,* that the common council approve of said assessment roll, and the lots and premises described in said roll as benefited by such work or improvement are, in the opinion of said common council, actually benefited thereby; and that said council receive as correct the description of the lots and premises, and the names of the owners or occupants therein contained; and that the sum stated in said assessment roll, which each such owner or occupant should be assessed and pay, be assessed and collected from such owner or occupant according to law."

The roll was numbered 208; was only partly collected when the city was enjoined from collecting further; and the assessment was abandoned as illegal, and the subject was not again taken up until February 6, 1884, when the following was adopted:

" *Resolved,* that, in the opinion of the common council, special assessment roll No. 208, to defray the expense of constructing a twelve-inch tile sewer on Adams street, from Bond street to a point mid-way between Washington street and Hamilton street, approved by the common council August 19, 1881, by a resolution adopted on that day, and which has not

been wholly collected, is invalid, for the reason that such assessment was not made in compliance with the law then in force relative to special assessments; and that, therefore, said special assessment be, and the same is hereby, vacated and set aside by the common council."

Also at the same meeting the following resolution was adopted:

"*Whereas,* special assessment roll No. 208, for constructing a tile sewer on Adams street, from Bond street to a point about midway between Washington street and Hamilton street, and which has not been wholly collected, has been vacated and set aside by the common council.

"*Therefore resolved,* that a new assessment be, and the same is hereby, ordered to be made, to defray the cost of said improvement, and the cost of the labor and materials furnished therefor, and the controller be, and he is hereby, directed to make out and report to the common council for consideration a special reassessment upon and against the lots, blocks, and premises in his opinion benefited by such improvement, and against the owners and occupants thereof, so far as the same may be known, as provided in section 4 of title 3 of the charter; and any sums paid on the assessment so vacated shall be credited on such reassessment to the property upon which the same was paid; and assessments upon property upon which the assessments were paid in full on the roll so vacated shall be marked 'Paid' upon such assessment roll by the controller before the same is delivered to the treasurer for collection."

At a subsequent meeting, the council adopted the following preamble and resolution:

"*Whereas,* the common council did heretofore fix the sixteenth day of April, 1884, at 8 o'clock P. M., at the common council room in this city, as the time and place to examine and take into consideration special assessment roll No. 248, to defray the cost of constructing a twelve-inch tile sewer on Adams street, from Bond street to a point midway between Washington and Hamilton streets, and furnishing materials therefor; and the council having examined and considered said special assessment roll, and heard all persons interested therein who have claimed a hearing, and having made no change in said roll as reported.

"*Therefore resolved,* that said assessment roll as reported,

in the opinion of the common council, will justly apportion the expense of said improvement equally upon the lots, blocks, and premises benefited thereby, in proportion to the benefit they will thereby respectively receive therefrom; and said assessment roll, as reported, is hereby adopted, ratified, and confirmed as and for an assessment by the common council to defray the cost and expense of said improvement, and of furnishing materials therefor."

It was under this resolution that the city was attempting to enforce the taxes enjoined in this suit.

There is no doubt but that the Legislature may authorize local taxation for the construction of a sewer in a city, and that the common council may be charged with the duty of making the assessment and collecting such tax; but in so doing the right of the citizen to his property requires that the authority given for that purpose should be strictly pursued.

It is also well settled that in these local improvements the property benefited thereby may be assessed for the making of the improvement, when public necessity requires it, in proportion to the benefits received. Although, as an original proposition, this doctrine could never receive my assent, it is, however, now too generally accepted as correct to be changed.

The assessment cannot exceed the benefit to be derived from the improvement, for the reason that the only principle upon which such special assessment can be made at all is that the value of the property is enhanced by the expenditure; and in authorizing the work, and the assessment therefor, the principles which underlie the law of eminent domain must be carefully guarded. We are not able to ascertain from the record whether these have been observed or not. It does not appear upon what basis the assessment for benefits was made. This should in some way be made to appear, as it is the right of every citizen assessed to know that the taxes he pays upon his property bear some reasonable proportion to those required of his neighbors for the same object.

Taxes should not be arbitrarily apportioned or assessed. They should be uniform. These local assessments are a species of taxation, and, while the principle underlying them is somewhat different from that upon which general taxation for revenue is based, still it is the money of the citizen that the public demands; and whether in those cases the assessment is made on frontage, valuation, benefits, or by area, the burden should be equally borne by all upon whom it is imposed. Whether this rule has been observed in this case cannot be determined from this record.

There are other objections to the proceedings in the case, however, which must be regarded as fatal. The second section of the statute under which the proceedings were taken expressly requires that the necessity for the construction of the sewer in question shall first be determined by the common council of the city. In this case the record does not disclose that any such determination was ever made. They determined to make it, it is true, but it does not appear there was any necessity for it, and this lies at the foundation of the entire proceeding. The necessity must exist in every case, and must be found by the Legislature or the common council. The power to determine when a special assessment shall be made, and on what basis it shall be apportioned, is confided to the Legislature alone. It may determine the extent of territory which may be assessed for the improvement, and may direct that the whole or any part thereof may be assessed upon the property in that territory.

Under the statute the common council are to be the judges of what lots are to be benefited by the proposed improvement. In this case we have only the opinion of the controller as to the property benefited by the improvement.

Neither does it appear anywhere in the proceedings that the amounts assessed are no more than the value of the improvements. It does not appear from the record that any member of the common council ever saw the street the sewer was laid

in, or any portion of the property which the controller says is benefited by the construction of the sewer. Neither does it appear the council took any testimony in regard to the benefit derived from the improvement. It is difficult to discover that the council did anything more than rely upon the opinion expressed by the controller as to the benefit of the sewer to the property assessed. Certainly a fair interpretation of the statute would require more of the council than this. They say they have examined the assessment roll presented to them by the controller, but they do not say they examined the property, or even knew its location, which the controller thought was benefited. The points raised, depending upon facts not appearing in the record, cannot be considered.

It will be discovered by the record that the first assessment was upon the basis that the property benefited should pay half the expense of construction. The city did pay its half, and several of the parties upon the roll paid their assessments in full, and then that assessment was declared invalid by the council, and the present assessment is ordered and made upon the basis that the property benefited should pay two-thirds of the expenses of the improvement, and that those who had paid the full amount of their assessment on the first roll should be exempt from further assessment. This could not be legally done, and an assessment which requires such discrimination between the properties of persons taxed cannot be sustained. It makes taxation unequal, and this is illegal under any system. The other points made by complainants' counsel will not be discussed at this time.

The decree entered by the circuit judge must be affirmed.

CAMPBELL, C. J., concurred with SHERWOOD, J.

CHAMPLIN, J.    I concur in affirmance upon the point last stated.

MORSE, J., concurred with CHAMPLIN, J.