## CORLISS *v.* VILLAGE OF HIGHLAND PARK.

1. STATUTES — IMPLIED REPEAL — MUNICIPAL CORPORATIONS — SPECIAL ASSESSMENTS—LIMIT OF TAXING POWER.

   Act No. 39, Pub. Acts 1899, providing that special assessment rolls to defray the cost of paving in villages shall be made in five parts, does not repeal section 2856, 1 Comp. Laws, limiting the amount of special assessments that may be levied in any one year against lands in any village organized under the general law to five per cent. of the value of such lands.

2. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS — EXTENSION OF TIME FOR PAYMENT—EFFECT ON LIMIT OF TAXING POWER.

   A paving assessment in a village organized under the general law, which, under Act No. 39, Pub. Acts 1899, is made in five parts, payable one part in each year for five years, is none the less a single assessment for a single year, and if its total amount exceeds the limit of five per cent. on the value of the property imposed by section 2856, 1 Comp. Laws, it is void as to the excess.

3. SAME—PRIORITY OF ASSESSMENTS.

   Where several special assessments are levied against land in a village, the sum of which exceeds the limit of taxing power, the payment legally enforceable against the land must be applied in favor of the assessment the roll of which was first confirmed.   Section 2841, 1 Comp. Laws.

Appeal from Wayne; Mandell, J.   Submitted May 2, 1906.   (Docket No. 137.)   Decided December 17, 1906.

Bill by John B. Corliss and Frank D. Andrus against the village of Highland Park and William H. Davison, village treasurer, to restrain the collection of a special assessment.   From a decree for complainants, defendants appeal.   Affirmed.

*Paul B. Moody* (*Charles D. Joslyn*, of counsel), for complainants.

*Rowland M. Connor*, for defendants.

McALVAY, J. Defendant in this case appeals from a decree setting aside as excessive two special assessments for local improvements levied by it upon lands of complainants in the year 1899. These lands are two certain lots, 6 and 7, Highland Park subdivision, in the village of Highland Park, each being assessed on the general tax roll of said village for that year at a valuation of $2,250, being a valuation of $4,500 for both lots. The two special assessments levied against these lots for 1899 were special assessment No. 15, for paving Woodward avenue, and special assessment No. 17, for lateral sewers; the total of both assessments on the two lots aggregating $1,095.41. Special assessment district No. 15, which included complainants' lots, was established by the resolution of the village council, June 26, 1899, which provided for the cost of said paving (except as to street intersections and street railway right of way) to be assessed upon the lands in said district. Later, the assessors were directed to make an assessment roll assessing the cost of the paving according to frontage; and, on July 29, 1899, said assessment roll having been duly made and filed was confirmed by the council and given to the treasurer for collection. On July 10, 1899, special assessment district No. 17, which also included complainants' said lots, was established by resolution, which provided for the construction of certain lateral sewers in said district. In due course of the proceedings the assessors were directed to make an assessment roll for the purpose named. On August 11, 1899, the council confirmed this roll, assessing upon the lands in said district the cost of said lateral sewers. Notices of these various proceedings were posted in said village as provided by the statute. Complainants were nonresidents of said village, and had no other notice of these assessments until in April, 1900, after the work was completed. This special assessment for sewers against these lots as originally assessed was as follows: Lot 6, $68.60, lot 7, $68.71. John B. Corliss, one of these complainants, and the owner of other

lots in said special assessment district No. 17, attacked the validity of the said assessment. This court (in *Corliss* v. *Village of Highland Park*, 132 Mich. 152) decided said special assessment invalid as to the excess over 5 per cent. of the assessed valuation, and directed a reassessment within the statutory limit of 5 per cent. A reassessment was made late in 1903, against lot 6, $34.55, and lot 7, $34.91. These assessments were returned delinquent with the delinquent taxes of 1904, and now stand against these lots which are liable to sale therefor.

The special assessment roll No. 15, for 1899, for paving above described, was made in five parts under the provisions of Act No. 39, Pub. Acts 1899, and said lots 6 and 7 were each assessed upon each part of said roll the sum of $95.81, making a total sum of $479.05 against each lot. Complainants made no election to pay by installments as they claim is required by said act, and, the first part not being paid, the whole amount was placed üpon the general village tax roll for 1900 at the sum of $518.97 against each lot, being the sum of the five parts with interest at 6 per cent. from October 1, 1899. These amounts now stand upon the books of the county treasurer of Wayne county and of the auditor general against these lots which are liable to sale therefor. There is no dispute as to the facts in the case, the same having been stipulated. Complainants attack these two special assessments, on the ground that an amount exceeding 5 per cent. of the assessed valuation of their lots 6 and 7 was raised by the village in the year 1899 therein for local improvements, contrary to section 2856, 1 Comp. Laws. This is the sole question in dispute in the case.

The village of Highland Park is incorporated under the general village act of this State. Section 2856, 1 Comp. Laws, being section 5, chap. 9, of said act, reads as follows:

"SEC. 5. The council may raise by special assessment upon lands in sewer districts and special assessment districts, for the purpose of defraying the cost and expense

of grading, paving, planking, and graveling streets, and for constructing drains and sewers, and for making other local improvements, charged upon the lands in the district in proportion to frontage or benefits, such sums as they shall deem necessary to defray the costs of such improvements, but not to exceed in any one year five per cent. of the assessed value of the property in the district chargeable with such expense. Moneys raised by special assessments to pay the cost of any such local improvement shall be held as a special fund to pay such cost and expense, or to repay moneys borrowed therefor."

Act No. 39, Pub. Acts 1899, under which the special assessment roll No. 15 for paving was divided into five parts, adds a new section to the general village act (chap. 8) as follows:

"SEC. 22. Special assessment rolls to defray the cost of street paving shall be made in five parts, each part to contain a list of the lots or parcels constituting the special assessment district with the names of the owners or occupants of each lot or parcel, and one-fifth of the cost or expense of the work shall be assessed upon each one of said five parts. Such parts of the assessment roll shall be numbered one, two, three, four and five, respectively, and any person so electing may pay part one and have an extension of time for the payment of parts two, three, four and five, of one, two, three and four years respectively. If part one is not paid on or before the same shall become due, the whole amount of the assessment against any lot or parcel shall be due and no extension of time shall be granted thereon. Deferred payments shall draw interest at the rate of six per cent. per annum, and if any default shall be made in the payment of an installment or of the interest thereon, the whole amount of the assessment then remaining unpaid shall mature and become due and payable, and thereupon the same proceedings shall be had for the collection of the amount still due as are authorized by this act in case the owners or occupants have not elected to pay in installments. The village council shall have power to issue bonds * * * to the amount of the deferred payments. * * * Owners and occupants electing to pay by installments shall pay the full amount of the interest on each installment down to the maturity thereof, but may pay the principal and such interest into the village treasury before maturity. * * * *"

In the case of *Corliss* v. *Village of Highland Park,*
supra, this court construed section 2856, and also section
2835, 1 Comp. Laws, of the general village act. The part
of this last section then under consideration reads as fol-
lows:

"In no case shall the whole amount to be levied by
special assessment upon any lot or premises for any one
improvement exceed 25 per cent. of the value of such lot
or land, as valued and assessed in the last preceding tax
roll. Any cost exceeding that per cent., which would
otherwise be chargeable on such lot or premises, shall be
paid from the general funds of the village."

The following language was used:

"These two sections must be construed together. So
construed one fixes the limit to the amount of the assess-
ment; the other fixes the limit which shall be assessed in
any one year."

In 1899, and before special assessment district No. 15
for paving Woodward avenue was established, and the
assessment confirmed, the legislature passed Act No. 39,
Pub. Acts 1899, under which the village council made
this assessment. There was no express repeal of any of
the sections of the general village act and the added sec-
tion 22 will not operate as such repeal unless its terms
are in such conflict with other parts of the act it necessa-
rily does so by implication. Without repeating this sec-
tion again at length, we may briefly state its provisions
which are necessary to be considered:

1. Special assessment rolls to defray the cost of street
paving shall be made in five parts.
2. The parts shall be numbered from 1 to 5, respectively,
" and any person so *electing* may pay part 1 and have an
extension of time for the payment of" the other parts "of
one, two, three, and four years, respectively."
3. If part 1 is not paid when due, the whole amount of
the assessment against any lot shall be due, and no exten-
sion of time shall be granted thereon.
4. Deferred payments shall draw interest at 6 per cent.,
and, in case of default in payment of any installment or

interest thereon, the whole amount of the assessment then unpaid shall become due and payable, and the same proceedings are authorized to collect the same as in case the owners or occupants have not *elected* to pay in installments.

5. The village council is authorized to issue bonds to the amount of the deferred payments.

6. Owners or occupants *electing* to pay by installments shall pay the full amount of interest to the maturity thereof, but may pay principal and interest before maturity.

. It is urged that the legislative intent and purpose by this amendment was to make the same provision for special assessments in villages as is made by the general act for cities, which was construed in *Boehme* v. *City of Monroe*, 106 Mich. 401–406, making the provisions of section 22 paramount to the provisions of the earlier sections with which it may be found to be in conflict. The legislative intent must be found in the enactment. The general act for cities relative to special assessments provides (section 3208, 1 Comp. Laws):

"The amount thereof may be divided into not more than five installments, one of which shall be collected each year, * * * but the whole assessment after confirmation may be paid * * * at any time in full."

And section 3210:

"A special assessment roll shall be made for each installment as the same shall become due. * * * Such special rolls may be made and confirmed without notice to the persons assessed."

The limitations upon the municipal authorities, in the two acts, as to the per cent. which may be raised for one improvement upon any one parcel, and the per cent. upon a whole district in any one year are identical. The sections above quoted provide that in cities the amount of a special assessment may be determined within the limitations, and divided into not more than five installments not to exceed 5 per cent. each, one of which shall be collected each year, and that special assessment rolls for each installment shall be made and confirmed as the same shall fall due. This

provision was held by this court in *Boehme* v. *City of Monroe*, supra, not to be in conflict with the above limitation upon the municipal power.

In the amendment of the general village act under consideration the division of special assessment rolls for paving into five parts is mandatory and not directory. But one assessment roll is made and confirmed. The taxpayer so electing may pay part 1 and have an extension of time for the payment of the other parts. If he does not pay part 1 when due, the whole assessment becomes due and payable, and no extension of time is granted. One act in clear terms provides for an assessment for each installment of the tax as it falls due. The other as clearly provides for one assessment of the entire tax, with a privilege to the taxpayer, if he so elects upon the payment of part 1, to have the time for payment of the other parts extended. The amendment makes no reference to the per cent. of the assessment authorized, and therefore does not conflict with the provisions of the general village act limiting the per cent. of special assessments to be raised in any one year.

This assessment was but a single one, and was made in the year 1899, and is in excess of the amount authorized to be raised in any one year. It is admitted that, unless authorized by the amendment of 1899, the village had no authority to levy special assessments in excess of 5 per cent. in any one year. See *Corliss* v. *Village of Highland Park*, supra.

Special assessments No. 15 for paving, and No. 17 for lateral sewers, were both made in the year 1899. These amounted in the aggregate to the sum of $1,095.41 against complainant's property. The total amount lawfully assessable for such purposes under the statute was $225, or $112.50 upon each lot. All in excess of that amount was illegal and invalid, and properly so held by the trial court. It appearing from the stipulation of facts in this case that the total amounts of these special assessments were returned as delinquent taxes, and these lots now

stand upon the list of lands subject to sale as delinquent tax lands, the trial court properly decreed that upon the payment of the sum of $225, being the amount of said assessments which was valid, complainants were entitled to full release and discharge of the lien thereof upon said lots. Complainants have always admitted that a 5 per cent. assessment could have been made upon these lots for the year 1899 for all special purposes. The situation was such that they could not know which assessment was valid, or in what proportion either or both were valid. It is of no consequence to complainants how the amount they are required to pay may be apportioned, provided their lands are released. Defendants, however, are entitled to know upon which assessment payment should be applied. Section 2841, 1 Comp. Laws, provides:

"All special assessments shall, from the date of the confirmation thereof, constitute a lien upon the respective lots or parcels of land assessed. * * *"

The paving assessment having been first confirmed became a lien prior to the assessment for lateral sewers, and upon the paving assessment the payment should be made.

The decree of the circuit court is affirmed, and a decree will be entered, containing the foregoing instruction as to application of payment, with costs to complainants.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.