COTE *v* VILLAGE OF HIGHLAND PARK.

1. TAXATION—SPECIAL ASSESSMENTS—IMPROVEMENTS.

On the theory that its value is enhanced by improvements, adjacent property may be specially assesssed to defray, in whole or in part, the cost of local public improvements by which such property is specially benefited.

2. SAME—CONSTITUTIONAL LAW.

Provisions of law which render it legally impossible for assessing officers to apportion the burden of such improvements according to benefits, and with proximate equality, are said to be arbitrary exactions and not a legitimate exercise of legislative authority.

3. SAME—FRONTAGE—APPORTIONMENT.

The apportionment of a paving tax may be constitutionally made according to frontage on the street, that principle having been found to be more just than any other. Under the general law the cost is to be divided in proportion to the respective fronts of the lots, but if an injustice would result the assessors may assess a given lot for such number of feet frontage as, in their opinion, would be just. 1 Comp. Laws, § 2837, 3 How. Stat. (2d Ed.) § 6058.

4. SAME—APPORTIONMENT—FOOT FRONT RULE.

To assess improved property at a higher rate than unimproved property having a like frontage, in order to keep the tax within 25 per cent. of the assessed valuation, as limited by the act regulating such assessments, does violence to the rule of equality and is not in accord with the discretion vested in the assessors to vary the foot-frontage rule so as to bring about equitable results in the case of peculiarly shaped lots.[1]

5. CONSTITUTIONAL LAW—ESTOPPEL BY PLEADING—TAXATION.

A municipal corporation is not estopped from asserting the validity of a statute providing for special assessments, because it set up the claim in a previous suit brought against it by a third party that the statute was unconstitutional, the decision being based on other grounds, not determining the constitutional question.

6. SAME—TITLE—OBJECTS—VILLAGES—"REGULATE."

Act No. 707, Local Acts 1907, is invalid because it attempts to amend the charters of four distinct villages, thereby embracing four distinct objects within its purview; and because provisions for borrowing money and issuing bonds are not included within its title, "An act to regulate the making of special assessments within the villages of Highland Park, St. Clair Heights, Hamtramck and River Rouge, in the county of Wayne." BIRD, J., dissenting.

Appeal from Wayne; Hosmer, J. Submitted June 20, 1912. (Docket No. 92.) Decided December 17, 1912.

Bill by Albert J. Cote and others against the village of Highland Park and others for an injunction. From a decree for complainants, defendants appeal. Affirmed.

[1] The question of assessments for improvements by the front-foot rule is discussed in an elaborate note in 28 L. R. A. (N. S.) 1124.

*Robert E. Barber* (*Paul B. Moody*, of counsel) for complainants.

*Edwin S. Bartlett*, for defendants.

STEERE, J.   This suit was instituted to restrain proceedings which were in progress to pave and curb Glendale avenue, in the village of Highland Park, and incidentally to test' the validity of the law under which such improvements were being conducted, and the method of assessing adjacent property to defray the expenses of such improvements.

The complainant Cote is a resident owner of lands in such village, and all complainants are residents of Wayne county, owning lots abutting upon said avenue.   The village of Highland Park is a municipal corporation in Wayne county immediately adjoining the city of Detroit on the north.   Though a distinct municipality, it is in fact a suburb of Detroit, and through it runs Woodward avenue, which is a main thoroughfare to and from said city.   Actuated by the growth and needs resulting from increased population, the council of said village, early in the year 1907, established a fire department, and during the following spring and summer entered upon an active program of street improvements, including paving and curbing Glendale avenue.   Said village is incorporated under and derives its powers from the general law for the incorporation of villages, and defining their powers and duties, being chapter 87 of the Compiled Laws of 1897 (3 How. Stat. [2d Ed.] § 5903 *et seq.*), together with public and local acts amendatory thereof and supplemental thereto.   Proper resolutions were passed and subsequent steps taken, admittedly following the provisions of appropriate statutes, to the point of levying a special assessment to meet the cost of the proposed improvement; but no contract was let or work actually done on the street, owing to the commencement of this suit.   The estimated cost of the improvement was $23,278.10, and a tentative assessment roll was made, which shows that out of the

total estimated cost there was first deducted $3,903.14 computed as the cost of street and alley intersections, to be paid by the village at large. The balance was first apportioned to the lots abutting the line of improvement according to the foot-front rule of assessment, making the tax about $4 per foot. But, whenever the sum so apportioned to any lot was found to exceed 25 per cent. of the value of such lot, according to the last preceding assessment roll, the excess was charged against the village at large, to be paid, together with the cost of street and alley intersections, out of the general fund of the village. As a result of this, about one-half of the taxable frontage was assessed at the maximum amount of approximately $4 per front foot and the other one-half at varying rates ranging from 83 cents to $3.96 per foot front. A certain lot used for church purposes, No. 27, is conceded to be erroneously assessed, because the amount charged to it exceeds 25 per cent. of its value, according to the last assessment roll on which it appeared, and defendant's counsel stated such lot should and would be reassessed. Following the prescribed steps leading up to a final assessment, a hearing on the assessment roll so prepared was set for September 1, 1911. On that date complainants secured a temporary injunction from the Wayne county circuit court, which was served before any hearing was had, and all further proceedings were thereupon suspended pending this litigation.

The objections launched by complainants against the proposed assessment are, briefly stated: That it is invalid—

(1) Because not made according to foot frontage *pro rata*, as required by statute; (2) because it is not according to benefits, is inequitable, and imposes unequal burdens; (3) because certain lots are assessed for street purposes in excess of 25 per cent. of their value as fixed by the last preceding tax roll; (4) because Act No. 707, Local Acts of 1907, under which the assessment in question purports to be made, is invalid, in that it embraces

objects not expressed in its title, embraces more than one object, and was irregularly passed.

The serious and important questions presented by the record and argued by counsel are: Were the statutory provisions governing special assessments in Highland Park complied with? If so, is an assessment by such method legal when, purporting to be levied according to frontage, it puts a greater proportionate burden on improved property than on adjoining unimproved property, the former having a greater assessed value on account of buildings thereon and the estimated foot-front tax on the latter being reduced because it exceeds 25 per cent. of the assessed valuation? Is Act No. 707 of the Local Acts of 1907 valid?

Authority for making special assessments to meet the costs of paving and other improvements on highways in villages incorporated under the general law is found in chapter 7 of said act, which deals with powers of the council. So far as material here, the provisions are as follows: Section 2786, 1 Comp. Laws (3 How. Stat. [2d Ed.] § 5903):

"The expense of grading, paving, graveling and planking any street may be defrayed by a special assessment upon the lots and premises abutting upon such improvement in proportion to their number of feet front upon the street; or a part of such expense may be so paid and the remainder may be paid from the general highway fund, or from the street district fund, as the council may decide. The lots and premises to be assessed according to their frontage upon a street improvement as aforesaid, shall constitute a special assessment district. * * *"

Section 2787, 1 Comp. Laws (3 How. Stat. [2d Ed.] § 5904), authorizes payment from the general highway fund of any portion of such cost which, in the judgment of the council or board of assessors is justly apportionable to street intersections, public grounds, and buildings—

"And the balance of such expense shall be assessed upon the taxable lots and premises included in the special assessment district, in proportion to their number of feet front-

age upon such improvement. When such assessment is to be made upon lots in proportion to their frontage upon the improvement, if from the shape or size of any lot an assessment thereon in proportion to its frontage would be unjust and disproportionate to the assessment upon other lots, the council or board of assessors making the assessment may assess such lot for such number of feet frontage as in their opinion will be just."

Chapter 8 of said act prescribes the method of initiating such improvements and making special assessments therefor. Section 2837, 1 Comp. Laws (3 How. Stat. [2d Ed.] § 6058), provides:

"If the assessment is required to be according to the frontage, they (the council or board of assessors) shall assess to each lot or parcel of land such relative portion of the whole amount to be levied as the length and front of such premises abutting upon the improvement bears to the whole frontage of all the lots to be assessed, unless on account of the shape or size of any lot an assessment for a different number of feet would be more equitable."

By Act No. 39, Pub. Acts 1899 (3 How. Stat. [2d Ed.] § 6073), a section was added to said chapter 8, being No. 22, authorizing a division of special assessments into installments and issuing bonds to defray the cost of the improvement until the deferred taxes were paid, making it, however, optional with the owner of the property to pay the first installment, and have the remainder extended over a series of years, and providing that, if the first installment is not properly paid, the whole amount shall thereupon become due and no extension granted. In *Corliss* v. *Village of Highland Park*, 132 Mich. 157 (93 N. W. 254, 610, 95 N. W. 416), it was held that prior to the enactment of said section 22 the law authorized but a single assessment, limited to 5 per cent. of the value of the property. In *Corliss* v. *Village of Highland Park*, 146 Mich. 597 (110 N. W. 45), it was held that an assessment made under added section 22, Act No. 39, Pub. Acts 1899, though payable in installments at the option of the owner, was, nevertheless, a single assessment, limited to

5 per cent. of the total value by the general village act. Following these decisions, Act No. 707, Local Acts of 1907, was passed, and the assessment in question was sought to be levied in conformity with said act and the general village law, construed together.   This act is entitled:

"An act to regulate the making of special assessments within the limits of the villages of Highland Park, St. Clair Heights, Hamtramck and River Rouge, in the county of Wayne."

Under said title, it was not only provided that assessments might be made payable in installments, being framed to authorize such a course under *Boehme* v. *City of Monroe*, 106 Mich. 401 (64 N. W. 204), and the views expressed in *Corliss* v. *Village of Highland Park*, 146 Mich. 597 (110 N. W. 45), but the act also increased the limit of the tax which might be assessed against property under such proceedings by the following language:

"SEC. 4. Any special assessment, when made in one part and when divided into installments, the aggregate of such installments, exclusive of interest, levied against any one lot or premises, may equal but shall not exceed 25 per cent. of the value of such lot or premises as valued and assessed in the last preceding general village tax roll.

"SEC. 5. Special assessment, when made in one part, and when divided into installments, no installment thereof, exclusive of interest, shall exceed five per cent. of the value of the district as valued and assessed in the last preceding general village tax roll."

It is apparent that in levying this assessment said Local Act No. 707 was followed and the requirements of the general act were observed, in so far as the amount to be levied and the condition of the property to be assessed permitted.   Attention was also paid to, and an attempt made to comply with, the various requirements of all statutory provisions, the combined result of which is an assessment purporting to be according to the foot-front rule and proportionate to the benefits, but in truth violating the letter and spirit of such rule, and imposing an excessive assess-

ment on improved lots in proportion to benefits received.

It is now well settled in most jurisdictions that adjacent property may be specially assessed to defray, in whole or in part, the cost of local improvements by which such property is especially benefited. That doctrine is based for its final reason on enhancement of values.

We have no special constitutional provisions restraining the exercise of legislative power in enacting laws which make provision for ascertaining what property is distinctively and specially benefited by local improvements and directing how the benefits shall be apportioned, so long as they are within the limit of the principle on which the doctrine is founded. By that limit such assessments must be laid and apportioned by the rules of enhanced values and reasonable equality. Provisions of law which make it legally impossible for the assessing officers to apportion the burden of such improvements according to benefits and with proximate equality are said to be "arbitrary exactions and not a legitimate exercise of legislative authority." Dillon on Municipal Corporations (5th Ed.), § 1443; *Thomas* v. *Gain,* 35 Mich. 155 (24. Am. Rep. 535); *White* v. *City of Saginaw,* 67 Mich. 33 (34 N. W. 255).

It was long since held that a special assessment according to street frontage was constitutional and valid.

"It has been decided in this State that an assessment of paving and similar taxes may constitutionally be made in proportion to frontage of lots along the improvement. *Williams* v. *Mayor of Detroit,* 2 Mich. 560; *Motz* v. *City of Detroit,* 18 Mich. 495; *Hoyt* v. *City of East Saginaw,* 19 Mich. 39 [2 Am. Rep. 76]. The idea that underlies statutes for this purpose is, that the benefit to the abutting lots is generally in proportion to the length of their respective fronts, and that, as a rule, this principle of apportionment is more just than any other. There is a basis of truth to this idea, and it is so generally accepted that assessments for street improvements are perhaps now more generally apportioned by the frontage than by any other standard." *Thomas* v. *Gain, supra.*

See, also, *Sheley* v. *City of Detroit,* 45 Mich. 431 (8

N. W. 52).   It is clear from the various provisions of our general law relative to special assessments in villages that the legislative intent was an application of the foot-front rule, requiring each owner to pay a share of the cost proportionate to the number of feet his property fronted on the line of the improvement, and in any case where the rule worked an injustice it was to be modified, as to that particular case, not by reducing the amount per foot, but by reducing the number of feet.   The act provides that the expense of such work may be defrayed by special assessment upon lots abutting upon the improvement "in proportion to the number of feet front upon the street." If, owing to the size or shape of any lot, this works an injustice, the authorities "may assess such lot for such number of feet frontage as in their opinion would be just." By section 2837, 1 Comp. Laws (3 How. Stat. [2d Ed.] § 6058), this method of assessing exceptional lots at the same rate per foot for a different number of feet frontage is again prescribed in these cases where equitable considerations demand a reduction.   The whole tenor of the law upon that subject is to maintain an equal foot-front assessment on all property, equitable and proportionate to benefits, with a discretion given the assessing authorities to assess for a less number of feet, but at the regular price per foot in cases where justice and equity demand it.   In this case such discretionary power was not exercised.   The inequality of assessment does not arise because of the peculiar shape or size of any lot.   All lots were assessed according to their actual frontage upon the street, but at a varying amount per foot.   This was not done in the exercise of discretionary power given the assessing officers to vary the rule in special cases to avoid inequalities and inequities, but was in compliance with mandatory provisions of said Local Act No. 707, which prohibits a special assessment against any lots exceeding 25 per cent. of their assessed valuation, irrespective of relative equities or proportionate benefits from the proposed improvements.

: This is subversive of the basic principles of special assessments according to benefits, unless construed to mean that in no case can such an amount be assessed against a district for improvements as would result in the proportion against any particular lot exceeding 25 per cent. of its assessed valuation. It cannot be disputed that in levying the amount proposed in this case a compliance with the requirements of said Local Act No. 707 results in an unequal assessment, which imposes a heavier proportionate burden on improved than on unimproved property, though equally benefited. The testimony shows that the village of Highland Park is making a rapid growth, that several houses had been built after the last general assessment roll was made and before it was proposed to levy this special assessment, and that others were in contemplation. The method of assessment followed in this case puts a premium on those who contemplate, and are preparing to make, improvements on their property, waiting until after the general assessment roll is completed. Should they immediately thereafter make such private improvements, even greater than those on adjoining property, they thereupon receive and enjoy equal or greater benefits from the public improvement, but pay comparatively small and disproportionate amounts therefor.

Such facts standing alone do not establish the invalidity of the assessment, but they graphically illustrate that benefits, or enhanced values, from public improvements, are not to be determined by the buildings upon, or use made of, the property at the time the assessments are being levied. The benefits, rather than the value of the property, govern in apportioning cost of local improvements, and the use made of the property by the owner, or contemplated by him, or whether he may ever put it to any use, is not the test. *Grand Rapids School Furniture Co.* v. *City of Grand Rapids*, 92 Mich. 564 (52 N. W. 1028); *Powers* v. *City of Grand Rapids*, 98 Mich. 393 (57 N. W. 250); *Lawrence* v. *City of Grand Rapids*, 166 Mich. 134 (131 N. W. 581). The discretion vested by

the general law in the assessing body to vary the foot frontage assessment can only be exercised to bring about equitable results in cases of peculiar shape and size of lots. The provisions of section 4 of Act No. 707, not only restrict their discretion in that particular, but compel an assessment which tends to inequitable results. The principles applicable to foot-front assessments have been stated in numerous authorities in varying language:

"Like general taxes, special assessments are enforced proportional contributions." "Laws may justly be made providing that under suitable and equitable regulations those common interests shall be so managed that those who enjoy the benefits shall equally bear the burden." "The levying of a special assessment is an exercise of the taxing power and requires that the basis of apportionment upon the property subject to assessment shall be uniform." "The apportionment should be such that the amount paid by one person or piece of property shall bear some reasonable relation to the amount paid by another in the assessment district or community where the burden is to be borne." Dillon on Municipal Corporations, §§ 1430–1433; *Wright* v. *City of Boston*, 9 Cush. (Mass.) 233; *Chaffee's Appeal*, 56 Mich. 244 (22 N. W. 871).

We are of opinion that the assessing officers painstakingly formulated the questioned assessment in conformity with the statutes, so far as their somewhat conflicting provisions permitted, and that the manifest inequalities are imputable to the requirements of said Local Act No. 707. This renders it incumbent on the court to consider the objections launched against the constitutionality of said act.

As already intimated, results which follow compliance with certain requirements of the act so tincture the law with the essence of unconstitutionality as to render it invalid. The specific and sweeping objections urged against its validity are stated in the bill of complaint as follows:

"(1) Act No. 707 of the Public Acts of 1907, entitled 'An act to regulate the making of special assessments

within the limits of the villages of Highland Park, St. Clair Heights, Hamtramck and River Rouge, in the county of Wayne,' is in contravention of the Constitution of the State of Michigan (article 4, § 20, of 1850; article 5, § 21, of 1909) in the following particulars:

" (2) Said act by its title does not purport to amend or repeal any provisions of the general village laws otherwise applicable to the villages enumerated, while section 7 of said act does amend or repeal section 5 of chapter 9 of the general village act (section 2856, 1 Comp. Laws).

" (3) Said act by its title purports to be an act for the regulation of the making of assessments provided by the laws of the State, while section 7 of the act undertakes to raise the limit of taxation of the villages named, and to authorize and empower the villages named to double the amount of taxes that may be raised in any one year, and, in the event of a special assessment, to pay for the property taken for public use.   Section 7 removes all limit to an amount that may be raised by special assessment in any one year.

" (4) Because there is nothing in the title to indicate that any new or increased power of taxation was to be granted.

" (5) Because there is nothing in the title to indicate that increased power to borrow money and issue bonds was to be granted by the act.

" (6) Because said act embraces seven separate objects, viz., to amend chapter 8 of the general village law relative to assessment.   To repeal section 5 of chapter 9 of the general village law relative to 'finance and taxation,' and to substitute section 7 therefor.   To provide new power in the matter of borrowing money and issuing bonds.   To regulate the making of special assessments in the village of Highland Park.   To regulate the making of special assessments in the village of St. Clair Heights.   To regulate the making of special assessments in the village of Hamtramck.   To regulate the making of special assessments in the village of River Rouge."

These reasons are copied almost verbatim from the answer and cross-bill filed by defendant in *Central Bitulithic Paving Co.* v. *Village of Highland Park*, reported in 164 Mich. 223 (129 N. W. 46, Ann. Cas. 1912B 719).   In that case the village was defending against a contract for paving, and among other defenses strenuously

contended against the constitutionality of said Act No. 707. The case was decided in favor of defendant on other grounds which fully disposed of the controversy, and, under the rule which obtains in such cases, the constitutional question was not considered or passed upon. We do not conceive that the village is estopped, either in law or in equity, from attempting to sustain the statute in question in this suit by reason of its invalidity having been urged in behalf of the same defendant in some previous litigation, but the circumstance is historically interesting, and the brief filed by counsel for the village in that case on the constitutional question is useful, instructive, and convincing. It was the opinion of the learned circuit judge that said act was invalid for the reason that it embraced more than one object, and objects were embodied in the act not expressed in the title.

It is to be observed that this act relates to, and proposes to amend, the charters of four separate villages, having their existence under four distinct charters. The village of Highland Park was incorporated under Act No. 371, Local Acts of 1889, the village of River Rouge was incorporated by the board of supervisors of Wayne county in 1899, the village of Hamtramck by the same authority in 1901, and the village of St. Clair Heights by the same authority in 1903. It is contended that all these villages, being adjacent to the city of Detroit, had been connected with its water and sewer systems by some arrangement previously made with the city, and are in a different position from other villages, constituting a class by themselves. While these villages adjoin the city of Detroit, they do not all adjoin each other, and we are unable to see how their relations to the city of Detroit have any bearing upon their relations with each other. Each necessarily made its distinct and individual arrangements with the city in order to get the sewer and water connections, and, as far as streets and street improvements are concerned, we do not discover anything which suggests a distinction between them and other villages throughout the

State. No distinctive community of interest between them is shown to exist, and their separate charters make them distinct and independent municipal corporations, each working out its own development according to its own methods and policy. Provisions requiring the object of an act to be expressed in its title, and limiting the act to one subject, are embodied in the constitutions of many of our States. The importance of such provisions has been discussed and emphasized in variant language in various jurisdictions. In the early case of *People* v. *Collins*, 3 Mich. 384, Justice PRATT dwelt upon the importance of a strict observance of those provisions in quaint but emphatic language, which has been approved and followed since by other courts, to the effect that each general subject of legislation must have its separate bill, so that it will stand or fall on its own merits. *People* v. *Mahaney*, 13 Mich. 481, goes more fully into the subject, and points out that a title may be general in its terms covering necessarily connected and cognate matters incident to one general subject, and need not go into the details of such proposed legislation. As in point here Justice COOLEY, who wrote the *Mahaney Case*, said in *People* v. *Denahy*, 20 Mich. 349, in which an act providing for the construction or improvement of three separate highways was held unconstitutional:

"The three objects are as separate and distinct as the three great lines of railroads crossing the State, and the same arguments which might be advanced in support of this act would support also an act which would single out those three railroads for special and peculiar legislation, in respect to which the roads have no necessary connection. A combination of that description would at once be pronounced unconstitutional by general consent; but it would not differ at all, in principle, from the present act, in which the combination of objects is equally apparent and equally unnecessary for any proper purpose of legislation. The only difference there could be in two cases would be that in the case of a combination of interest among powerful corporations to secure favorable legislation on their behalf, a purpose to evade the constitutional requirement

would generally be very apparent, while in this case we do not imagine it to have existed at all; but the question of violation of the Constitution is not a question of intent."

Incorporating distinct municipalities under one act was held by the supreme court of Georgia unconstitutional in *King* v. *Banks*, 61 Ga. 21. The constitution of that State provided: "Nor shall law or ordinance pass which refers to more than one subject-matter or contains matter different from what is expressed in the title," being, in that particular, substantially as our own. The legislature of Georgia passed an act incorporating the two towns of High Shoals and Belton. In holding the act invalid, the court cited and quoted from *Ex parte Conner*, 51 Ga. 571, in which it was held separate military companies could not be incorporated under one act, as follows:

"Judge McCay said in delivering the opinion of the court:

"'This case has for its avowed purpose the creation of three separate corporate bodies, and, as we think, comes exactly within the intent and scope of this prohibition.'

"And he adds that the intent was to prevent log-rolling, or combining the strength of different measures to carry all through when one alone might fail. * * * We think that the principle ruled in that case covers this. If to incorporate more than one military company with the grant of certain privileges be unconstitutional, because there is more than one subject-matter in the act, we cannot see how to incorporate two towns with greater powers and privileges * * * can be upheld."

If to incorporate separate villages by one act is unconstitutional, it is equally so to amend the separate charters of existing villages. We conclude that under the authorities cited, Act No. 707 embraces in its title four distinct objects by proposing to regulate the making of special assessment in four separate villages, thereby amending their four several charters.

The act increases the power of taxation by raising the

limit of special assessments from 5 per cent. to 25 per cent. of the assessed valuation, and grants the right to issue bonds therefor, until the special assessments are paid. While the word "regulate" has been given a comprehensive meaning, and construed to signify both government and restriction, thereby including in an act all subjects germane to the object named, it does not so much imply creating a new thing as arranging in proper order and controlling that which already exists. *United States* v. *Harris*, Fed. Cas. No. 15,315. In this case the power to make special assessment to a certain amount already existed and the method of doing it would be a regulation. To increase that amount would be a new thing. But, even if "to regulate" could be construed to include the power to increase, the right to borrow money and issue bonds is distinct from, and in no sense pertinent or germane to, making special assessments.

We are constrained to hold that the conclusions reached by the learned circuit judge are sound and unavoidable.

The decree is affirmed, with costs.

MOORE, C. J., and MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred with STEERE, J.

BIRD, J. I concur in the result reached, but am of the opinion that the title of the act is valid.