# THE EAST JORDAN LUMBER COMPANY v. THE VILLAGE OF ʼEAST JORDAN.

*Municipal corporations—Water supply—Authority to contract—Mandamus—Constitutional law—Title of act.*

100 201
d119 488

100 201
126 348

100 201
s58ᴺᵂ1012
132 ⁴161

100 201
152 682

100 201
154 569
154 570

1. An objection that the prayer of a petition for *mandamus* to compel a village, incorporated under the general village incorporation act, to levy a tax sufficient to pay the amount due on a contract to furnish a water supply for the prevention of fires, is not sufficiently definite, in that it is not ascertainable from said prayer whether a special or a general assessment is asked for, is untenable, as the Court can and will direct as to the nature of the assessment, if a *mandamus* is granted.

2. The provisions of chapter 11 of the general village incorporation act (How. Stat. §§ 2970–2980), which authorizes the construction, maintenance, and protection of waterworks in villages incorporated under said act, were intended to hedge about the proceedings of the village council in providing for the purchase or establishment of waterworks to be owned by the village, and are not inconsistent with the power to lease or purchase from individuals water for fire protection.

3. Subdivision 16 of section 1 of chapter 7 of the general village incorporation act (How. Stat. § 2847), which authorizes the village council to make ordinances for the organization and regulation of the fire department, and for the prevention and extinguishment of fires, and section 2 of chapter 10 of the same act (How. Stat. § 2959), which provides that "the council may purchase and provide suitable fire engines and apparatus for the extinguishment of fires, and may sink wells and construct cisterns and reservoirs in the streets, public grounds, and other suitable places in the village, and make all necessary provisions for a convenient supply of water for the use of the [fire] department," empower the village to contract with private individuals to furnish a water supply for the prevention of fires, and for the use of the fire department, without a vote of the electors.

4. Where such a contract purports to bind the village as a corporation, and is approved by the council in that form, payment for the fire protection thus secured should be made out of the general fund, under section 1 of chapter 9 of said act

(How. Stat. § 2923), which authorizes the village council to raise by general tax upon all the real and personal property liable to taxation in the village (exclusive of taxes for highway and street purposes) such sum, not exceeding in any one year one and one-fourth per cent. of the assessed value of such property, as they shall deem necessary for the purpose of defraying the general expenses and liabilities of the corporation, and to carry into effect the powers in said act granted, and provides that the moneys so raised shall constitute a "general fund."

5. Act No. 385, Local Acts of 1889, entitled "An act to amend Act No. 334 of the Local Acts of 1887, entitled 'An act to incorporate the village of East Jordan, Charlevoix county,' approved February 7, 1887, by adding four new sections thereto, to stand as sections 7, 8, 9, and 10, relative to water supply, and levying special taxes therefor," in so far as it attempts to authorize the council of said village to provide for the payment of the claim of the relator by a special assessment, to be levied and collected in accordance with the provisions of section 7 of the act, is invalid, said object not being expressed in the title to said amendatory act; citing *Nester v. Busch*, 64 Mich. 657.

*Mandamus.*    Argued January 18, 1894.    Granted May 18, 1894.

Relator applied for *mandamus* to compel respondent to levy a tax sufficient to pay the claim of relator under a contract to furnish a water supply.    The facts are stated in the opinion.

*Pratt & Davis,* for relator.

*S. G. Field* and *R. L. Corbett.* for respondent.

MONTGOMERY, J.    This is an application for a *mandamus* to compel the respondent, by its common council, to proceed to levy a tax sufficient to pay the relator the sum of $2,249.21, due upon a contract between the relator's assignor[1] and the respondent, by which the relator's

---

[1] The contract was made with a copartnership doing business under the firm name of the East Jordan Lumber Co., which subsequently assigned to the relator.

assignor undertook to furnish a water supply for the prevention of fires.

The contract was made in 1888, and, in substance, provided that the lumber company should furnish, and connect with its sawmill boilers, a duplex steam fire pump, with not less than five-inch suction and four-inch discharge, and lay a five-inch wrought-iron pipe along Main street to the south line of Williams street, in the village of East Jordan, with one two-way hydrant at each intersecting street, and keep not less than 50 pounds of steam on one or more of its boilers, continuously, and furnish water to the village to the fullest capacity of the pump, for fire protection, and, for the space of one hour per day, for street-sprinkling purposes. The village, on its part, agreed to pay monthly to the company the sum of $35, from the completion of the waterworks, for the space of three years, for such time in each year when the mill should run for sawing purposes, and such further sum as should equal the cost of keeping up steam and maintaining said waterworks in running order during the period when said mill should not be running, and any other expense to which the company should be liable on account of keeping up steam in said boilers during the period in which the mill should not be running, and to pay such other sum or sums as should equal the amount of taxes that should be levied on the premises of the said company for the purpose of fire protection. The village also agreed to furnish and connect with the waterworks a four-inch wrought-iron pipe, to extend from the corner of Mill and Main streets, along Mill street to Second street, and to furnish and keep not less than 500 feet of 2½-inch fire hose. It was also agreed between the parties that individuals living along the water mains should have the privilege, under the direction and permission of the council, to tap mains for water supply.

Under this contract the services were performed, and the village had the benefit. Bills were from time to time rendered, and audited by the common council, but remain unpaid. A special assessment upon a district was attempted to be made for the purpose of paying the relator's claim, but collection was not enforced; doubtless, for the reason that the validity of the assessment was questioned. If the village was acting within the scope of its corporate powers in making the contract, there can be no doubt of the justice of the relator's claim.

Among the objections urged to the granting of the relief prayed for is that the prayer of the petition is not sufficiently definite, as it is not ascertainable from the prayer whether a special assessment is asked for, or a general assessment. We do not deem the petition faulty in this respect. The Court can and will direct as to the nature of the assessment.

It is contended that the contract is beyond the power of the common council, as it amounts to providing a system of waterworks, and it is said that this cannot be done without a vote of the people; and it is further urged that the council proceedings show that the purpose was to provide for the payment of sums growing due on the contract by special assessment, and that this excludes the power to provide for payment by a general assessment; and it is further contended that no special assessment can be made, as the expense of maintaining waterworks must be paid out of the general fund of the village, and that, under the charter, an estimate of the cost of a public improvement must be made before it is undertaken, and the cost thereof collected before making the improvement.

The inquiry of first importance is whether it was within the scope of the corporate powers of the village to provide for the services and water supply for fire protection, as contemplated. If it was, inasmuch as the bills for the

services and water supply have been audited, the justice of the claim is apparent. If, however, the contract was wholly without the scope of the corporate powers of the village, it follows, not only that the contract itself cannot be the basis of an action, but that it could not be afterwards ratified so as to create a liability. See 1 Dill. Mun. Corp. § 463, and *Spitzer v. Village of Blanchard*, 82 Mich. 234. If, on the other hand, the contract be one which it was within the power of the corporation to make, the fact that informalities may be found in the proceedings does not prevent recovery, in a case where, as in the present, the municipal corporation has had the benefit of performance by the other contracting party, and has from time to time ratified the contract, and audited the bills presented. See *Gas Co. v. City of San Francisco*, 9 Cal. 453; *Bridge Co. v. City of Frankfort*, 18 B. Mon. 41; *McDonald v. Mayor*, 68 N. Y. 23; *Fetterly v. Municipality of Russell*, 14 U. C. Q. B. 433; *Carey v. City of East Saginaw*, 79 Mich. 73; 1 Dill. Mun. Corp. § 459. This rule is, of course, not applicable where express statutory restrictions have been ignored in making the original contract. It is claimed that such was the case here.

The village was incorporated under the general village incorporation act, and it is urged that section 2973, How. Stat., as amended (see 3 How. Stat. p. 3235), provides that, before any money shall be borrowed, appropriated, raised, or expended for the construction of waterworks in any village subject to the provisions of this act, the council shall cause to be made an estimate of the expense thereof, and the question of raising the amount required for such purpose shall be submitted to the electors of the village. The chapter of which this section is a part is, in substance, as follows:

Section 1 provides that any village organized under the provisions of this act shall have authority to construct and

maintain waterworks for the introduction of water into the village, and supplying the village and the inhabitants thereof with pure and wholesome water, for the extinguishment of fires, and the ordinary and extraordinary uses of dwellings, stores, shops, hotels, factories, manufacturing establishments, mills, public buildings, yards, streets, livery stables, barns, and all other buildings and establishments.

Section 2 provides that the village may acquire, purchase, erect, and maintain such reservoirs, canals, appurtenances, machinery, etc., and may purchase and own such real estate, rights, and privileges, as may be necessary and proper for the construction and maintenance of such waterworks.

.Section 3 provides that it may borrow money to be used exclusively for the purpose of constructing and maintaining waterworks.

Section 4 is the section previously quoted.

Section 5 provides for a board of water commissioners. And the succeeding sections provide for fixing rents, for the care and protection of the waterworks, for certain police regulations, and for the condemnation of private property for the construction, erection, and maintenance of such waterworks.

We think it is evident that these provisions were intended to hedge about the proceedings of the council in providing for the purchase or establishment of waterworks to be owned by the village, and are not inconsistent with the power to lease or purchase water for fire protection from individuals. We think this power is conferred under other provisions of the charter. Subdivision 16 of section 2847 confers authority to make ordinances for the prevention and extinguishment of fires. Section 2959 provides that—

"The council may purchase and provide suitable fire engines and apparatus for the extinguishment of fires, and may sink wells and construct cisterns and reservoirs in the

streets, public grounds, and other suitable places in the village, and make all necessary provisions for a convenient supply of water for the use of the department."

These provisions are broad enough to justify the expenditure attempted. Certainly, the contract, and the action of the council in accepting and auditing bills for a supply of water, were within the authority to make necessary provision for a suitable supply of water for the use of the department.

As to the contention that no general assessment can be made, because the village council took no action tending to such assessment, it is sufficient to say that the resolution providing for a special assessment was no part of the contract. On the contrary, the contract purported to bind the village as a corporation, and was approved by the council in that form; and we agree with the contention of respondent's counsel that, under the provisions of section 2923, the payment for the fire protection should have been made out of the general fund.

It is suggested by relator's counsel that Act No. 385, Laws of 1889 (Local Acts, p. 600), authorizes the spreading of a special assessment to cover this claim. The terms of the act are undoubtedly broad enough to justify such action, but, without considering their validity in other respects, it is sufficient to say that the title to the act did not express such an object, and the retrospective provisions of the act are, for this reason, invalid. See *Nester v. Busch*, 64 Mich. 657.

The village has had the benefit of a full performance by the relator; it has ratified, by auditing these bills, a contract which, as we have said, it had the original power to make; and we think, within settled rules, the village is bound to respond to relator.

A writ of *mandamus* will issue, directing the general assessment upon the property of the village of a tax suffi-

cient to pay the amount due to the relator, and directing the president and clerk of the village to draw proper orders on the treasurer for the sums that from time to time have been passed upon and allowed by the common council, and requiring the treasurer, upon presentation of said orders, after said tax shall have been raised and collected, to pay the same to the relator.

McGrath, C. J., Long and Grant, JJ., concurred. Hooker, J., did not sit.

