CORLISS v. VILLAGE OF HIGHLAND PARK.

1. MUNICIPAL CORPORATIONS — SPECIAL ASSESSMENTS — COUNCILMEN — DISQUALIFICATION.

A member of the common council of a village incorporated under chapter 87, 1 Comp. Laws, who is the owner of land within a special assessment district, is not thereby disqualified from acting with the council in establishing the district and ordering the assessment.

2. SAME — EXCESSIVE ASSESSMENT.

A village sewer assessment, levied under 1 Comp. Laws, § 2856, amounting to 12½ per cent. of the assessed value of the property in the district, is void as to the excess over 5 per cent., which should have been assessed upon the village at large.

3. SAME — INVALID ASSESSMENT — NEW ASSESSMENT.

Where a village council imposed the entire tax upon the property of a special assessment sewer district, in excess of

the amount permitted by statute, it might correct the irregularity by making a new assessment for the same purpose. Section 2843, 1 Comp. Laws.

4. SAME—POWER OF COURT TO COMPEL NEW ASSESSMENT.

Where sewers have been constructed in a village, and the special assessment therefor is invalid because exceeding 5 per cent. of the value of the property in the sewer district, the court will compel the village council to make a new assessment, and to levy the excess upon the village at large.

5. SAME—VILLAGE COUNCIL—POWER TO BORROW.

Under section 2872, 1 Comp. Laws, a village council may borrow money in anticipation of a special assessment, but not to exceed the amount of such assessment.

6. SAME—SPECIAL ASSESSMENTS—SEWERS—PAVING.

Where under 1 Comp. Laws, § 2856, providing that no assessment for more than 5 per cent. of the valuation of the property in any special assessment district shall be made in any one year for sewers, paving, grading, etc., a small portion of the land included in a sewer assessment district had been also included in a paving assessment district, but the owners of such lands made no objection to the assessment, the court, in ordering a new assessment, refused to deduct the amount of the paving assessment from such per cent. of the value of the property in the sewer district in determining the amount chargeable to the lands of complainant, which were not included in the paving district.

7. SAME—ASSESSMENT FOR PERIOD OF YEARS.

A village organized under chapter 87, 1 Comp. Laws, has no power to extend a special assessment over a period of years.

Appeal from Wayne; Brooke, J. Submitted October 14, 1902. (Docket No. 6.) Opinion filed January 27, 1903. Supplemental opinion February 25, 1903. Rehearing granted April 28, 1903. Reargued May 12, 1903. Former decision affirmed June 15, 1903.

Bill by John B. Corliss against the village of Highland Park and William H. Davison, village treasurer, to restrain the collection of a special assessment. The Detroit Savings Bank interveried as the owner of a warrant payable from said assessment. From the decree rendered, all parties appeal. Modified.

In 1899 the common council of the village of Highland Park took proceedings to establish sewer district No. 17, and to construct a sewer in the district. The expenses of the sewer were fixed at the sum of $14,531.44, all of which was assessed upon land in the district. Complainant owned property in this district, which was assessed for the construction of this sewer in the total sum of $1,483. The land in this district which fronted on Woodward avenue was also assessed during the year 1899, prior to the proceedings to establish the sewer district, for the sum of $4,475.85, for paving Woodward avenue. The assessed valuation of the property in district No. 17 on the assessment roll of the village of Highland Park for the year 1899 amounted to the sum of $169,003. The lateral sewers in district No. 17 were actually constructed and completed, and the contract for the building of the same was let to George E. Currie. The assessment roll for the paving of Woodward avenue was confined to the lots immediately fronting on Woodward avenue, and it is claimed by the defendants that the sewer assessments were limited to the lots upon the side streets. The assessment roll and the warrant for the collection of such special assessment were duly placed in the hands of the village treasurer, and at the time this bill was filed he was taking proceedings to collect the same. Advertisements asking for bids for the construction of the sewer were published in the Free Press and Detroit Tribune, published in the City of Detroit, Mich. Notices of review of assessments were posted in the village of Highland Park in pursuance of the resolutions adopted by the common council of the village.

About the middle of April, 1900, complainant received a letter from the treasurer of the village of Highland Park, stating that his lots had been assessed for the sum of $1,483.80. He then brought this suit against the village of Highland Park and William H. Davison, treasurer, to restrain the collection of these taxes. After suit was brought, about the 29th of June, 1901, the Detroit Savings Bank filed a petition in the circuit court for the county of

Wayne, asking leave to intervene in the case, claiming that it was the owner of an order or warrant dated January 27, 1900, issued by the village of Highland Park, to be paid out of the fund to be raised in this assessment district, and on the 29th day of June, 1901, an order was made permitting the bank to intervene as a defendant. The case was tried, and on the 3d of July, 1901, a decree was rendered, which decreed that $1,083 of the said tax was excessive, and it was set aside, and that the complainant should pay into court the sum of $400, with interest at 5 per cent. from the 12th of April, 1900, and that upon such payment the land should be released and discharged from all liability for the cost and expense of the construction of the sewer, and that the defendants be perpetually restrained from collecting said tax. The complainant paid the $400 into court as required by the decree. The defendants appealed from this decree. Complainant is willing to abide by the decree, but, for the purpose of protecting his rights in the case, has also appealed.

*Bacon & Yerkes* and *C. D. Joslyn*, for complainant.

*Wilkinson & Younglove* (*James Cosslett Smith*, of counsel), for defendant village of Highland Park.

*Sidney T. Miller* and *James Cosslett Smith* (*Wilkinson & Younglove*, of counsel), for defendant Detroit Savings Bank.

GRANT, J. (*after stating the facts*). 1. Is the assessment void because two of the members of the common council were owners of land in the assessment district? The law under which the defendant village is incorporated provides that no tax or assessment shall be imposed, or any public improvement ordered, unless by a concurring vote of two-thirds of the trustees-elect. 1 Comp. Laws, § 2752. The council, by appropriate resolution, fixed the assessment district, which included lands belonging to these two councilmen. Then the board of assessors, provided for by section 2832, 1 Comp. Laws, met, made the

assessment, and reported the same to the common council. The council and the board of assessors met as a board of review. No objection was made to the assessment, and it was unanimously confirmed by the council. If these two councilmen were disqualified, then the assessment is void, because their votes are essential to make the necessary two-thirds. Counsel for complainant insist that they were disqualified, within the principle of the following decisions of this court: *Peninsular R. Co.* v. *Howard,* 20 Mich. 18; *Stockwell* v. *Township Board of White Lake,* 22 Mich. 341; *Wilson* v. *Township Board of Burr Oak,* 87 Mich. 240 (49 N. W. 572); *Locke* v. *Wyoming Township Highway Commissioner,* 107 Mich. 631 (65 N. W. 558); *Lewick* v. *Glazier,* 116 Mich. 493 (74 N. W. 717). They also cite cases from other courts.

None of these cases involve this question. In *Peninsular R. Co.* v. *Howard,* two of the jurors were stockholders of the plaintiff company. In *Stockwell* v *Township Board of White Lake,* a member of the township board was interested in one of the orders involved in the litigation. In *Wilson* v. *Township Board of Burr Oak,* it was held that two members of the board were disqualified because they were interested in laying out the highway in dispute, and had already prejudged the case by expressing their opinions. In *Locke* v. *Wyoming Township Highway Commissioner,* two members of the township board were held disqualified because one had made an affidavit that the highway was a public necessity, and the other had stated that he would decide it as he had done before. In *Lewick* v. *Glazier,* three of the village trustees were stockholders of the electric-light company, which made a contract with the village through the common council.

There is no more reason why the councilmen in this case were disqualified than they would be if the assessment district included the entire territory of the village. Supervisors and assessors of all municipalities are generally taxpayers, and have it in their power to favor them-

selves in assessing their own property; but this does not disqualify them. *Ex necessitate,* municipal officers must thus be more or less pecuniarily interested. If members of village boards, generally few in number, are disqualified to act in establishing assessment districts because they own land to be affected by an assessment, it would be necessary to make some other provision for determining when and how they should be established. The legislature has never made any other provision, and it is fair to assume that it never contemplated that such officers would be thus disqualified. There is no claim that any member of the board of assessors was interested, or that that board acted improperly in any respect. These two councilmen would naturally be interested in keeping their lands out of the assessing district, but they were placed within it. They had nothing to do with making the assessment. They voted to confirm the report of the board of assessors, whose action is not in any wise attacked. We think they were not disqualified.

2. Section 2856, 1 Comp. Laws, provides that the assessments in sewer districts, etc., "shall not exceed in any one year five per cent. of the assessed value of the property in the district chargeable with such expense." The assessment amounted to 12½ per cent. The court held it void as to the excess of 5 per cent. Section 2835 of the same act provides that "in no case shall the whole amount to be levied by special assessment upon any lot or premises for any one improvement exceed 25 per cent. of the value of such lot or land as valued and assessed in the last preceding tax roll. Any cost exceeding that per cent., which would otherwise be chargeable on such lot or premises, shall be paid from the general funds of the village." These two sections must be construed together. So construed, one fixes the limit to the amount of the assessment; the other fixes the limit which shall be assessed in any one year. No attempt was made to spread it over various years, as was done in *Boehme* v. *City of Monroe,* 106 Mich. 401 (64 N. W. 204). The assessment in that case

was made under the act for the organization of cities, and it contained a provision that any special assessment might be divided into not more than five annual installments. That provision is not found in the village law. Whether the same result would be reached as in that case, if the common council had provided for annual assessments, is not before us for determination. If the common council desired to raise the money in one year, the only way open to them was to assess 5 per cent. against the landowners, and to assess the balance upon the property of the municipality at large.

3. Section 2833, 1 Comp. Laws, authorizes the council to determine what proportion of the cost of such improvements shall be assessed by special assessment, and what shall be paid from the general funds of the village, or from street district funds. Section 2843 authorizes the common council, in case, in its judgment, any such tax is invalid by reason of irregularity or informality in the proceedings, or if any court of competent jurisdiction shall adjudge such assessment to be illegal, to make a new assessment for the same purpose for which the former assessment was made. The only irregularity consists in attempting to impose the entire tax upon the property of the special district in one year, contrary to the law. We think this is clearly a case where the council is authorized to proceed under this statute to correct the irregularity.

4. The law expressly authorizes the common council to borrow money to make the improvements in anticipation of the special assessment, but not to exceed the amount of such assessment. 1 Comp. Laws, § 2872. The loan from the intervener, the Detroit Savings Bank, is therefore valid.

5. A very small portion of the land in this special assessment district No. 17, fronting on Woodward avenue, was included in the assessment for the pavement of that street, and the cost of that pavement was deducted by the court from the total amount of this special assessment in order to arrive at the amount held to be a proper charge against

complainant. In this we think the court was in error. Complainant's land was not included in that assessment district. He is therefore not concerned in raising that question. The owners of the land so included are the only ones injured thereby, and they are not here complaining.

Decree will be entered in this court in accordance with this opinion. The case will then be remanded to the court below, with instructions to see that the provisions of the decree are carried out.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred.

### SUPPLEMENTAL OPINION.

PER CURIAM. After the opinion in this case was handed down, counsel for all the parties interested filed a stipulation requesting the court to determine whether the assessment might be extended over a period of years, as was done in *Boehme* v. *City of Monroe,* 106 Mich. 401 (64 N. W. 204). This stipulation was complied with, and oral arguments were submitted. We are all of the opinion that the power to extend the taxes for various years is not conferred by the statute. As we said in the former opinion, *Boehme* v. *City of Monroe* was based upon an express statute authorizing such extension. No such provision is found in the village act, and we are not at liberty to infer that it was omitted by mistake. It follows, as stated in the former opinion, that the village council must proceed to assess the excess above 5 per cent. upon the village at large.

### ON REHEARING.

GRANT, J. After the former decisions in this case had been rendered, the defendant village applied for a rehearing, claiming that its views as to the legality of the proceedings had not been properly presented to the court, and that the village, under the belief that it was not interested, but that the contest was one virtually between the com-

plainant, the contractor, and the defendant bank, had intrusted its defense mainly to the counsel for the other parties.    Rehearing was granted, and the case has been again fully argued.    We see no occasion to change our former opinion.    Neither the contractor nor the bank had any contractual relations with the assessment district.    The contracts with the contractor and with the bank were both made with the municipal corporation through its trustees. The trustees were clothed with power to order the sewer, to make contracts for its construction, and to borrow the money to build it.    The trustees did not exceed their authority.    They had power to fix a district, and apportion 5 per cent. upon the assessed valuation in payment thereof, and to assess the balance upon the village at large, or pay it out of its general fund.    It must be presumed that the trustees intended to construct this sewer.    It was their duty to find out how much they could assess upon the district, and to assess the balance upon the village at large.    Those dealing with the municipality under such circumstances had the right to assume that its trustees had acted legally, and had done what the charter authorized them to do.    The statute contemplates that a sewer is not alone for the benefit of a locality, but is essential to protect the health of all the inhabitants; else it would not provide that a portion of the expense may be placed upon the village at large.

Under the contention of the complainant, both the district and the defendant village have secured the construction of a sewer without any cost to them.    Courts can only sanction such a result when compelled to do so by the inexorable rules of law.    It is no new doctrine that municipalities will be compelled to do that which their charters give them power to do.    Where the law provided that the board of supervisors of a county owing debts which its current revenue was not sufficient to pay "may, if deemed advisable, levy a special tax not to exceed in any one year one per cent. upon the taxable property," etc., it was held that the law was mandatory, although permissive

in form; that it was the legal duty of the corporation to levy the tax; and that, whenever the public interest or individual rights called for the exercise of this power, courts would compel action. *Supervisors* v. *United States*, 4 Wall. 435. It was also held in a case very similar to the one now before us that it was the duty of the city to proceed with a new assessment. The court said:

" It is true that, under the contract, petitioner was to be paid from and out of the money to be raised by the assessment, and it is also true that the city did not personally assume the payment for the improvement; but the city did assume the obligation to collect the assessment imposed to pay for the improvement, and that obligation, in connection with the other facts and circumstances in the case, required the city to use all reasonable efforts within its power to make and collect a new assessment to pay petitioner for the labor and materials used in the construction of the improvement, as provided in the contract." *People* v. *City of Pontiac*, 185 Ill. 437, 445 (56 N. E. 1114).

It is also said that, "where a city agrees to pay for certain improvements out of a fund to be raised by assessments upon abutting property, and which the property owners refused to pay, and the city was without authority to enforce, the city is primarily liable." 2 Smith, Mod. Law Mun. Corp. § 1275, and cases there cited; *Commercial Nat. Bank* v. *City of Portland*, 24 Or. 188 (33 Pac. 532, 41 Am. St. Rep. 854); *City of Chicago* v. *People*, 56 Ill. 327.

The principle governing this case was enunciated in *East Jordan Lumber Co.* v. *Village of East Jordan*, 100 Mich. 201 (58 N. W. 1012), where this court, speaking through Mr. Justice Montgomery, said:

" The village has had the benefit of a full performance by the relator; it has ratified, by auditing these bills, a contract which, as we have said, it had the original power to make; and we think, within settled rules, the village is bound to respond to relator."

So in this case the defendant village entered into con-

132 Mich.—11.

tracts with the contractor and with the bank, which it had full authority under the law to make. It has received the full benefit of said contracts. It made a mistake in attempting to assess the whole cost of the public improvement upon a local district. It had power to assess a portion upon the district and the rest upon the village at large. It was a mistake or irregularity which the law authorizes it to correct. Having received the benefits, the law will compel it to do what it has the power to do.

Our former decision is affirmed.

The other Justices concurred.