CENTRAL BITULITHIC PAVING CO. *v.* VILLAGE OF HIGHLAND PARK.

1. APPEAL AND ERROR — INJUNCTION — QUESTIONS REVIEWABLE — RESTRAINING ACTS ALREADY ACCOMPLISHED.

    In a suit to enjoin a municipal corporation from interfering with the performance of a contract with complainant for paving a street, after the accomplishment of the work by the contractor, complainant is, nevertheless, entitled to review on appeal a decree in which its contract was declared void upon defendant's cross-bill, and complainant restrained from enforcing the contract in an action at law.

2. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS —STATUTE OF FRAUDS.

    It is a general rule that where the specification of a public improvement fully describes the work to be done, and a bid in writing is made to do the work, is accepted and entered of record, sufficient evidence of a contract exists to satisfy the statute of frauds.

3. SAME—EXECUTION OF CONTRACT—FORM.

    If, in such case, the execution of a written contract is provided for, in terms, in the charter of a municipality, is not executed, and materials are furnished and used in execution of its terms, the neglect to execute it will not prevent the recovery of the reasonable value of whatever is furnished.

4. SAME—CONTRACTS.

A contract is not made so long as both parties contemplate the doing of something in addition to what they have done, to establish contract relations; nor does the law make a contract when the parties intend none, or regard as complete an arrangement which the parties regard as incomplete.

5. SAME—VILLAGES—CONTRACTS.

Under the provisions of 1 Comp. Laws, § 2836, requiring the collection of special assessments before making the improvement for which it is levied, where a village, by resolution, accepts a bid for paving and directs the mayor to execute a contract in accordance therewith, but fails to provide by a sufficient assessment for the cost of the improvement, and, on finding that such assessment would exceed the legal limit, rescinds its previous action, no valid contract is shown to have been intended by the parties or completed, although the contractor thereafter proceeded to complete the work under its contract.

Appeal from Wayne; Donovan, J. Submitted November 28, 1910. (Docket No. 49.) Decided December 30, 1910.

Bill by the Central Bitulithic Paving Company against the village of Highland Park, to restrain defendant from interfering with the performance of a contract for a public improvement. From a decree granting defendant affirmative relief and declaring the contract invalid, complainant appeals. Affirmed.

*Arthur Jones* (*J. M. Head*, of counsel), for complainant.

*Rowland M. Connor*, for defendant.

OSTRANDER, J. Complainant claims to have made a contract with the defendant to pave a street, to have entered upon the performance thereof, and to have been denied the right to continue performance and complete the contract by the action of defendant. The relief prayed for in the bill of complaint is:

"That upon the hearing of this cause a decree may be

entered ordering and directing that a permanent writ of injunction issue out of and under the seal of this court directed to the said defendant, and to its officers and agents, commanding them, and each of them, to absolutely desist and refrain from interfering in any manner with your orator in its construction of the work required by it to be done under its aforesaid contract with the said village of Highland Park."

There is the usual prayer for other and further relief. The bill was answered, and defendant prayed, as affirmative relief, that complainant be permanently restrained from claiming any benefit or advantage, or from bringing any suit at law, under the alleged contract; that the court determine and decree that a certain special assessment, called No. 47, is illegal and void. There was an answer to the cross-bill, replications, a hearing in open court, and a decree adjudging the alleged contract to be null and void, restraining the complainant from enforcing in equity, or at law, any claim or demand under or by virtue thereof, and determining that special assessment No. 47 is illegal and void.

Counsel for defendant states in the brief, and stated orally in argument, that the street has been paved. In the reply brief for complainant, the fact that the street has been paved is admitted, with the statement that nevertheless the fact ought not to be considered by this court, but a decision should be made of the points presented to the court below, after which, if the decision is favorable to complainant, the fact that the street has been paved may be considered in the framing of the decree. We assume that complainant can in no event now have relief by injunction. Relief by injunction might well have been refused in the first instance on the ground that an action for damages would afford adequate relief. But the decree determines, upon the contention and at the request of the defendant, that the contract relied upon by complainant is illegal and void and restrains complainant from asserting it in an action at law. In consequence, complain-

ant is entitled to have that question re-examined by this court.

Some further statement of the facts is required. The bid of complainant was accepted and the village attorney instructed to prepare the necessary contract in conformity with said bid, and submit the same to the council for consideration and approval. This was on August 30, 1909. At a meeting held September 8, 1909, the contract prepared by the city attorney was read and amended. Thereupon a resolution, reciting that, as amended, the contract be approved and the president and clerk instructed to execute the same for the village, and that the bonds submitted by complainant be approved and filed, was declared by the presiding officer to be out of order. The resolution was withdrawn, the bonds of complainant were read, the form of the contract was again amended, and the resolution theretofore withdrawn was again offered, again declared to be out of order, and an appeal from the decision of the chair was sustained. Thereupon by a vote of four to two the resolution was adopted. At a regular meeting of the council held September 13, 1909, a communication from the president, dated September 11, 1909, was read, in which, after a recital of some of the proceedings of the council relating to the improvement, is the following:

"There is also to be considered the fact that while you propose to let a contract which shall involve an expenditure of approximately $120,000, you have never at any time given [notice to the taxpayers of the village nor afforded them a hearing upon any improvement involving such an amount, nor have they had a hearing as to the manner in which such a proceeding will affect their property rights. For these reasons, as well as others before stated to you, I consider the action of the council irregular, illegal, and beyond the powers delegated to council by legal enactment, and I desire to urge upon you that you should rescind all action heretofore taken in this matter, subsequent to the confirmation of the assessment on district No. 47, and the resolution of August 30th, accepting the bid for paving, and that you proceed in an orderly and regular manner in accordance with the advice of your attorney

heretofore given to you, in order that the rights of the taxpayers of the village of Highland Park may not be violated or jeopardized, and that you may fulfill the purposes for which you were elected as representatives of the village. I desire to advise you that unless steps are taken by this body to cure the defects and irregularities which I believe make the action of the council illegal, as I have stated in this communication, and to you verbally before this time, and if it be the determination of this council to proceed along the lines outlined as being its purpose heretofore, without any attempt to cure the defects to which I have called attention, believing this action to be illegal and in violation of the rights of the citizens of this village and an usurpation of powers not delegated to this council by law, I must decline to sign the contract."

Thereupon the council, by a vote of three to one, rescinded the action theretofore taken as above set forth, and other actions, including that of August 30th, accepting the bid of complainant. The complainant, on September 11, 1909, filed in the circuit court for the county of Wayne a petition for an order to the president and clerk of the village to show cause why the contract should not be signed. The order was issued and served, and on September 14, 1909, the said proceeding was discontinued. In his testimony in the case at bar, the attorney for complainant in that proceeding gave, as a reason for dismissing the proceeding, his opinion that the action of the council of September 13th deprived the president and clerk of all authority to execute the contract.

The statute does not require that such contracts shall be reduced to writing and signed by a representative or officer of the village. It is the contention of complainant that a valid contract existed on and after August 30, 1909. The objections to the validity of the contract which are made by defendant are (1) that it was not signed; (2) that complainant by instituting the mandamus proceeding is estopped to deny the necessity for signing; (3) the contract was *ultra vires* the village, because (*a*) it called for an expenditure of money beyond all available funds

on hand or which could be raised, (b) there was no assessment to pay for that portion of the cost directed to be raised by special assessment, either levied or collected; (4) the special assessment No. 47, which had been made, was insufficient to pay the cost of the portion directed to be raised by special assessment, and was also for various reasons invalid.

It is the general rule that where the specification of a public improvement fully describes the work to be done, and a bid in writing is made to do such work and is accepted and entered of record, sufficient evidence of a contract exists to satisfy the statute of frauds. Smith's Modern Law of Contracts, § 727; *Argus Co.* v. *Mayor, etc., of Albany,* 55 N. Y. 495 (14 Am. Rep. 296). And if, in such a case, the execution of a written contract is provided for, in terms, in the charter of a city, is not executed, and the materials are furnished and used, the neglect to execute the contract will not prevent the recovery of the reasonable value of whatever is furnished. *Carey* v. *City of East Saginaw,* 79 Mich. 73 (44 N. W. 168). See, also, *East Jordan Lumber Co.* v. *Village of East Jordan,* 100 Mich. 201 (58 N. W. 1012); *Corliss* v. *Village of Highland Park,* 132 Mich. 152, 159–162 (93 N. W. 254, 610, 95 N. W. 416); *City of Fort Madison* v. *Moore,* 109 Iowa, 476 (80 N. W. 527). We assume that if the street had been paved in accordance with the specification and bid, the mere fact that the contract was not signed by the president and clerk of the village would not support the contention, if it was made, that there was no contract. But a contract is not made so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete.

The statute governing the defendant village provides, among other things (1 Comp. Laws, § 2836), that—
"Special assessments, to defray the estimated cost of any

improvement, shall be levied or collected before the making of the improvement." While it is true that the complainant was not seeking, and in the course of things would not have, contract relations with a special assessment district and would have them with the defendant village ( *Corliss* v. *Village of Highland Park, supra* ), it is also true that the defendant village proposed, as its records showed, to collect the greater part of the cost of the paving by means of a special assessment. The estimated cost of the improvement was considerably less than the complainant's bid. The assessment ordered July 6, 1909, was based upon an estimate of a total cost of $106,738.44, of which more than $81,000 was ordered to be raised by a special assessment upon abutting property. The remainder was ordered to be paid from the general highway fund. Complainant's bid was $115,669.49. It was estimated that the cost of engineering and inspection would be $3,470.08. The total prospective cost was therefore $119,139.57. Of the amount which had been ordered assessed upon abutting property, the assessors reported that they had actually assessed $80,083.75 and could not lawfully assess more because of certain statute limitations. It seems to now be admitted that as to some lots which were assessed the lawful limit of assessment was exceeded. The council on September 8th ordered a supplemental special assessment to provide for a deficiency of $8,759.66 and ordered $2,735.96 of the same deficiency paid out of the general highway fund, as well as $1,184.64 which the assessors had reported they were unable to spread on the first special assessment roll.

It appears, further, that the combined general and highway funds of the village, assuming that they contained all that had been appropriated for them, would be overdrawn more than $17,000, if charged with the amounts necessary to do the paving outside of that raised by special assessments. To these two funds and the special assessment the council was obliged to look for means to defray the expense of the proposed improvement. There was no power

to add to the amount in the funds during the current year. The special assessment was levied under the powers conferred by Act No. 707, Local Acts 1907. The validity of this act is questioned by the defendant.

We have referred to these matters, not for the purpose of determining the validity of the special assessments, but for the purpose of showing what every one interested in the matter must have understood, that the council, as it was bound to do, was trying to provide the means to defray the cost of the proposed improvement in advance of making the improvement. It was a single proceeding and the receiving of bids and the acceptance of one of them was a necessary incident thereto. With this statement of facts, the basis of the communication made to the council by the president appears, as does the reason for the action of the council in rescinding the various resolutions theretofore adopted. The precise limit of the powers of the council need not be determined. Whether the contract, if it had been entered into, could have been enforced, is unimportant. It is apparent that the council did not propose to enter into a contract for paving until it was satisfied that provision had been made for discharging the contract obligation. Becoming satisfied that it had not made the necessary provision, it refused to enter into a contract, the form of which it had approved, but which it had not, finally, bound the village to perform. We do not believe that either the complainant or the common council supposed that, upon the acceptance of complainant's bid, on August 30, 1909, contract relations were established. The evidence supports the affirmative conclusion that neither party supposed that contract relations would be established until the formal contract was executed.

Finding no contract, we find no reason for disturbing the decree upon this appeal, and we therefore affirm it, with costs to appellee.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.