VILLAGE OF SHELBY *v.* STEARNS LIGHTING & POWER CO.

1. MUNICIPAL CORPORATIONS—CONTRACTS—MOTION TO RESCIND— EFFECT OF VOTE TO RECONSIDER.

Where a village council adopted a motion rescinding the clause in its contract with a lighting and power company providing the rate to be charged for light and power, and in place thereof adopted a new clause providing a higher rate, but before any action by the company accepting said new rate the council again met and reconsidered its action, the effect was to abrogate the vote by which the rate was changed.

2. SAME—CONTRACTS—ACCEPTANCE AFTER VOTE TO RECONSIDER.

The action of the company in filing the new rate with the railroad commission after the council had reconsidered the vote by which the rate was increased, *held,* not to amount to an acceptance.

3. SAME—PLEADING—FRAUD—RELIEF.

On a bill by the village to enforce the original contract rate, where the bill alleged fraud and also alleged that the rate charged was in excess of the legal rate provided in the contract, with a prayer for injunctive as well as general relief, the court had power to grant injunctive relief, although he did not find any fraud.

Appeal from Oceana; Vanderwerp (John), J.   Submitted January 7, 1920.  (Docket No. 24.)  Decided February 27, 1920.

Bill by the village of Shelby against the Stearns Lighting & Power Company for the specific performance of a contract.  From a decree for plaintiff, defendant appeals.  Affirmed.

*A. S. Hinds,* for plaintiff.

*K. B. Matthews (A. A. Keiser* and *H. L. Campbell,* of counsel), for defendant.

· MOORE, C. J.   This is an appeal in a chancery case where a decree was entered in favor of the plaintiffs. The issues involved are stated in an opinion of the trial court from which we quote:

"This was a bill filed by the village of Shelby, a municipal corporation, against the Stearns Lighting & Power Company, and it appears that there was a contract entered into between these parties on February 19th, 1917, by which the Stearns Lighting & Power Company agrees to do certain things, among them to light the streets of the village of Shelby and to provide electricity for lighting in other ways, and also provides, in the 4th clause of the contract that the company will make a rate for power purposes of not to exceed two and one-half cents per horse power hour, with a minimum charge of fifty cents per month per horse power installed.  This contract was to run for a period of ten years from and after its date.

"The defendant operated under the contract and furnished light and power according to the contract. On October 21st, 1918, a Mr. Bergen, who claimed to represent the defendant, appeared before the council of the village and asked that the council strike out of the contract clause No. 4.  *  *  *  No action was taken at that meeting, and on October 25th, 1918, the council again met, and Mr. Bergen was present, as well as Mr. Chase, representing the Stearns company. Action was taken at that meeting, as the records show, as follows:

"'After due consideration motion was made by Moore, seconded by Johnson, that the 4th section of our present contract with the Stearns Lighting & Power Company be stricken out and the new section submitted by the company be accepted and adopted, which is as follows, the same to take effect December 1st, 1918.'

and then follows the proposition, so-called, and the motion was carried.

"Now it is claimed by the bill that there were certain misrepresentations made by Mr. Bergen at one or both of these meetings, and that that was the reason the action was taken making the change in the contract.

"On October 31st, the council again met and the council then took action as follows:

"'After a report was read from the clerk, showing the cost to the Shelby Milling Company for nine months upon the basis of the rates allowed under the previous contract and under the rates the council had adopted, which showed a cost of about $200 under the new than under the old; also that the company had claimed they had furnished the basket factories power at the rate of one and one-half cents and their receipts showed that they had paid two and a half cents with two exceptions and these were two cents, Moore made a motion that the council reconsider the action taken Friday evening, October 25th. The motion was seconded by Heald and carried, all the council voting yes. Motion made by Johnson, seconded by Moore, that the council reject the proposed power rates of the Stearns Lighting & Power Company submitted by their representative, Mr. Bergen, on Monday evening, October 25th. Motion carried.'

"It is claimed by the defendant company that the action taken on October 25th made a final contract, changing the original contract, while it is claimed by the village, the plaintiff here, that the council had the right to make the change, and then that the council had the right at the following meeting, there being no unreasonable delay, to reconsider the action taken and to decline to make the change, and the village claims that this was particularly true because of the fact that there were misrepresentations made with reference to the original proposition and what the result would be if the new clause was adopted. * * * I am of the opinion that the village council could reconsider the action taken by it at the previous meeting, for these reasons: In the first place, village councils have the right to reconsider action taken at previous meetings ordinarily, where no rights have intervened; also, in the second place, there was no acceptance of the proposition, or rather, of the action taken by the council between the time when the action of October 25th was taken and the time of reconsideration, and also there was no consideration moving to the village as a consideration for the change. Of course, that wouldn't be necessary if there had actually been a writing filed accepting the proposition; that would have made a contract without any consideration.

"Of course, I realize the claim of the other side is that by filing the rate with the railroad commission that that was an acceptance, but the testimony clearly shows by the admissions in the pleadings and by the testimony, that the filing of the rate with the railroad commission was done after the action taken on October 31st, because it appears that copies of all three of the meetings were sent to the Stearns people, and that they selected or took only two and filed them with the Lansing commission and retained or did away or something with the other, so that it is clear that they didn't file or even attempt to file—couldn't have filed the action of the council with the railroad commission before the action had really been reconsidered by the council.    *    *    *

"Now it is claimed by the defendant that the records did bind the defendant.    I don't believe that that is the law.    *    *    *

"While there may be something to the claims of misrepresentations that were made, I don't think that as far as that is concerned that the situation is in very satisfactory shape, but I don't think it is necessary for me to determine that question in order to dispose of the case, in the view that I take of the other part, and therefore I think the prayer of the bill should be granted, that is, that the injunction should issue, that the schedule adopted by the council on October 25th and rejected on October 31st, if that action is needed by this court, may be declared to be null and void.    In fact it is my holding that it is null and void, by the action taken on the later date, and that, therefore, the original contract is in force, and that the company may be enjoined from raising its rates over and above the original contract price, and of course costs should follow the decree in favor of the plaintiff."

A decree was entered in accordance with the opinion.

Counsel for the appellant have assigned a large number of errors as in a law case, and have argued them at length.    We do not know why this procedure is taken.    We deem it, however, our duty to try this as all other chancery cases are tried, *de novo,* upon the record as presented here.

Counsel say the case stated in the bill of complaint is founded upon fraud, and that the case must stand or fall upon that proposition; that there was no fraud in fact, that the trial judge did not find any fraud, and the bill does not present any other theory and upon this record should have been dismissed. The bill does aver fraud and also avers what was done and what was not done in great detail. It avers:

"And plaintiff expressly charges that all charges made in excess of the rate mentioned in said paragraph 4 are illegal and void."

It not only prays for injunctive relief but it has a prayer for general relief. We think the averments of the bill of complaint are such as to allow the chancellor to grant such relief as he thinks the facts warrant.

Another phase of the case is presented by counsel in the brief as follows:

"Defendant having made a proposal and plaintiff having by action of its council duly and regularly accepted the same, a contract existed and no further action on the part of either was necessary. Rescission of that contract was not possible without the assent of defendant, and under the cases above cited, the attempt of the council to rescind was of no effect. It may be reasonably taken as established that such proposal was in writing, as it actually was. The same record discloses the unanimous vote of the council in accepting and adopting the proposal. Such a proffer, with the acceptance constituted unquestionably a contract, and a further acceptance on the part of the proposer is unnecessary.

"The facts herein set forth bring the case within the Michigan rule as set out in *Central Bitulithic Paving Co.* v. *Village of Highland Park.* In this case the village had prepared specifications for certain paving upon which plaintiff submitted a bid. The bid was accepted by the village council and the attorney instructed to prepare a contract accordingly. This action occurred on August 30th. A contract was pre-

pared but was not satisfactory. The contract was amended but still not signed and on September 11th, the president of the village indicated that unless the council took certain action he would refuse to sign. Whereupon the council attempted to rescind its action. The court held:

"'It is the general rule that where the specification of a public improvement fully describes the work to be done and a bid is made to do such work and is accepted and entered of record, sufficient evidence of a contract exists to satisfy the statute of frauds.' *Central Bitulithic Paving Co.* v. *Village of Highland Park,* 164 Mich. 223 (Ann. Cas. 1912B, 719)."

There are two answers to this contention: The first is that it does not appear either in the bill of complaint or in the answer or in the record itself that any written proposal signed on behalf of the defendant was ever submitted to be accepted by the council on October 25th. The other reason is found in the case cited by counsel when correctly read. Counsel has doubtless inadvertently omitted some important words in his quotation from the case. It reads "and a bid in writing is made to do such work." In the instant case the record does not show a written proposal which was accepted by the council, nor does it show, after the council had acted on October 25th, a written acceptance by the defendant company until action was taken looking to a reconsideration.

We again quote from the brief of counsel:

"There can be no possible doubt but that all the pleadings and evidence in the case show a modification and rescission of paragraph four. And the agreement to so modify and rescind because of defendant's refusal to perform because of financial loss comes clearly within the Michigan rule as to consideration for such agreements. Plaintiff knew its rights and had its remedy   Upon defendant's refusal to perform paragraph four it could rescind the entire contract and oust defendant from the village. Instead it chose to enter into a new arrangement. It would be difficult to find a more parallel case to the Michigan

authorities which hold that in such circumstances the new agreement is based upon a sufficient consideration which rule is expressed and affirmed in *Moore* v. *Locomotive Works,* 14 Mich. 266; *Goebel* v. *Linn,* 47 Mich. 489 (41 Am. Rep. 723) ; *Blodgett* v. *Foster,* 120 Mich. 392; *Scanlon* v. *Northwood,* 147 Mich. 139; *Pulpwood Co.* v. *Perry,* 158 Mich. 272. Having made such a modification, that act destroyed the old paragraph four completely and it could not be revived except by mutual assent of both parties which is lacking herein."

This contention overlooks the effect of the action taken by the village council on October 31st. Cushing on Law and Practice of Legislative Assemblies, § 1265, in speaking of the effect of a motion to reconsider, says:

"If this motion prevails the effect of the vote in question is abrogated and the matter stands before the assembly in precisely the same state and condition and upon the same question as if the vote which has been ordered to be reconsidered had never been passed."

Upon this record the decree of the lower court is affirmed, with costs to the plaintiff.

STEERE, BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.