No. 46,326

C. J. ANDERSON and VERDA M. ANDERSON, in Person, and for All Other Persons Similarly Situated, *Appellants*, v. THE CITY OF PARSONS and ROY E. MOORE, MYER S. FRESHMAN and RICHARD R. COMBS, Constituting the Board of Commissioners of The City of Parsons; THE URBAN RENEWAL AGENCY OF THE CITY OF PARSONS and CLYDE M. REED, CHARLES H. MILLER, JOHN J. TROY, CHARLES W. BROWN and CARL HERRING, Constituting the Board of Commissioners of the Urban Renewal Agency, *Appellees*.

(496 P. 2d 1333)

Opinion filed May 6, 1972.

*Payne H. Ratner, Jr.,* of the firm of Ratner, Mattox, Ratner, Ratner and Barnes, of Wichita, argued the cause, and *Richard R. Barnes,* of the same firm, was with him on the brief for the appellants.

*Richard C. Dearth* and *Glenn Jones,* of Parsons, argued the cause, and were on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action to enjoin permanently any further steps to carry out the existing program for urban renewal in the

city of Parsons, Kansas. The plaintiffs C. J. Anderson and Verda M. Anderson are residents of Parsons who own a business building included in the Downtown Parsons Urban Renewal Project. Defendants are the city of Parsons and its commissioners and the Urban Renewal Agency and its commissioners. The urban renewal program for Parsons had its genesis on May 16, 1966, when the board of commissioners of the city adopted a resolution finding certain areas in the city to be "slum and blight areas". On the same day the city commissioners passed a resolution creating and appointing the Urban Renewal Agency of the city and authorizing it to exercise the powers conferred upon such agencies by the Kansas Urban Renewal Law. (K. S. A. 17-4742 thru 17-4761.) The city commissioners appointed as Urban Renewal Commissioners Clyde M. Reed, Charles H. Miller, John J. Troy, Charles W. Brown and Carl Herring. The urban renewal agency proceeded to carry out its functions by taking the necessary steps to conduct preliminary surveys and in due course developed an urban renewal plan and an urban renewal project for the Parsons central core area. The urban renewal plan was submitted for approval to the city commissioners of Parsons. After a public hearing the city commissioners on January 22, 1969, by resolution approved the urban renewal plan as proposed by the urban renewal agency and also an urban renewal project commonly known as "Downtown Parsons, Kansas R-46". On February 5, 1969, the city of Parsons acting through its commissioners entered into a contract with the urban renewal agency by which the agency obligated itself to enter into a contract with the United States for the acquisition, clearance, and disposition of the land contained in the urban renewal project. The city obligated itself to pay one-fourth of the net project costs.

The controversy in this case arose because the Andersons did not want their business building taken for the urban renewal program. They had been in business at the same location in Parsons for approximately 33 years. The Andersons took the position that their business building was in good condition and structurally sound, and that it was arbitrary and capricious for the urban renewal agency and the city commission to designate their building for destruction to provide land area for use by a major mercantile establishment which was to be the keystone of the central core project.

On March 17, 1969, the Andersons filed this action on behalf of themselves and all other persons similarly situated to enjoin further urban renewal action under the urban renewal plan and project adopted on January 22, 1969. At the time the action was filed the urban renewal agency had spent $185,248 for planning services and entered into contracts obligating the expenditure of further sums in the total amount of $605,172. On June 24, 1969, the Andersons filed a motion for a temporary restraining order which was denied on September 2, 1969. On December 23, 1969, the Andersons filed another motion for a temporary restraining order or in the alternative for permission to take an interlocutory appeal from the previous order of the court denying temporary relief. On January 17, 1970, the district court denied the motion for a restraining order or for permission to take an interlocutory appeal.

The Anderson case was tried on its merits before District Judge Hal Hyler sitting without a jury. On June 12, 1970, the district court entered judgment in favor of the defendants denying injunctive relief to the plaintiffs and making findings of fact and conclusions of law. The Andersons appealed to this court.

During the period this litigation has been pending the urban renewal agency has continued to develop the Parsons urban renewal program. As of January 30, 1970, the urban renewal agency had purchased for demolition property of the value of $1,000,000 and contracted to purchase other property for an estimated cost of $185,000. As of that date the urban renewal agency had relocated 31 families, 48 individuals, and 27 businesses and had contracted to move a total of 88 families, 120 individuals, and 130 businesses. The utility companies in Parsons were involved in plans and engineering for relocating utility lines. Downtown business stores had been demolished and a high-rise apartment for the elderly was in the process of construction on a portion of a street that had been vacated. On April 7, 1972, oral argument was presented to this court. At that time we were advised that as of March 31, 1972, there had been spent in excess of $6,000,000, the project was 58% completed and 220 properties had already been demolished.

The appellants, Mr. and Mrs. Anderson, raise a number of points on this appeal which attack the validity of various proceedings in the development of the urban renewal program in Parsons. Ap-

pellants' primary point raises an issue of conflict of interest involving the city commissioners of Parsons and also the board of commissioners of the urban renewal agency. In addition appellants contend that both the urban renewal board and the city commissioners acted arbitrarily with respect to the designation of the urban renewal area and in formulating and executing the Parsons Urban Renewal Project. Let us consider each of these points in order.

The appellants' first point involves an alleged conflict of interest arising from the fact that City Commissioners Myer S. Freshman and Barton Dean and all of the five urban renewal commissioners owned property within the general urban renewal area at the time they voted on various resolutions during the progress of the urban renewal program. The legislature provided in the urban renewal law for a special conflict of interest section to disqualify any officer or employee of the city or of the urban renewal board who owned property included or planned to be included in an urban renewal project. The specific section referred to is K. S. A. 17-4758 which declares as follows:

"No public official or employee of a municipality (or board or commission thereof), and no commissioner or employee of an urban renewal agency which has been vested by a municipality with urban renewal project powers under section 15 [17-4756] shall voluntarily acquire any interest, direct or indirect, in any urban renewal project, or in any property included or planned to be included in any urban renewal project of such municipality or in any contract or proposed contract in connection with such urban renewal project. Where such acquisition is not voluntary, the interest acquired shall be immediately disclosed in writing to the local governing body and such disclosure shall be entered upon the minutes of the governing body.

"If any such official, commissioner or employee presently owns or controls or owned or controlled within the preceding two (2) years, any interest, direct or indirect, in any property which he knows is included or planned to be included in an urban renewal *project*, he shall immediately disclose this fact in writing to the local governing body, and such disclosure shall be entered upon the minutes of the governing body, and any such official, commissioner or employee shall not participate in any action by the municipality (or board or commission thereof), or urban renewal agency *affecting such property*. [Emphasis supplied].

"Any disclosure required to be made by this section to the local governing body shall concurrently be made to an urban renewal agency which has been vested with urban renewal project powers by the municipality pursuant to the provisions of section 15 [17-4756]. No commissioner or other officer of any urban renewal agency, board or commission exercising powers pursuant to this act shall hold any other public office under the municipality other than

his commissionership or office with respect to such urban renewal agency, board or commission. Any violation of the provisions of this section shall constitute misconduct in office."

It is undisputed in the evidence that on May 16, 1966, at the time the resolutions were passed by the city commission declaring certain areas of Parsons to be "slum and blight areas" and creating and appointing the urban renewal agency, two of the three Parsons city commissioners owned real estate in the slum or blight areas. The same two commissioners continued to own their properties at the time the urban renewal plan was adopted. The two commissioners mentioned were Myer S. Freshman and Barton Dean. On January 22, 1969, the city commission by resolution approved the urban renewal project. At that time commissioners Freshman and Dean owned property within the urban renewal *area* but did not own any land within the area covered by the urban renewal project. As pointed out heretofore, at all stages in the development of the urban renewal program, all of the five urban renewal commissioners had an interest in property located within the general urban renewal area. The first issue to be determined is whether or not the various actions of the urban renewal board in establishing and developing the urban renewal program and the various actions of the Parsons city commissioners in approving the urban renewal plan and in approving the urban renewal project were so tainted with conflict of interest within the meaning of K. S. A. 17-4758 as to completely invalidate *ab initio* all of the actions and steps taken by the urban renewal board and by the city commissioners in developing the Parsons urban renewal program. It should be emphasized that each of the commissioners made a full disclosure of his property interest in the urban renewal area before participating in any action of his board.

We, of course, recognize the common law principle that a public officer owes an undivided duty to the public whom he serves and is not permitted to place himself in a position that will subject him to conflicting duties or cause him to act other than for the best interests of the public. If he acquires any interest adverse to those of the public, without a full disclosure it is a betrayal of his trust and a breach of confidence. (*United States v. Carter*, 217 U. S. 286, 54 L. Ed. 769, 30 S. Ct. 515.)

The law, however, does not forbid the holding of an office and exercising powers thereunder because of a *possibility* of a future

conflict of interest. (*Reilly v. Ozzard*, 33 N. J. 529, 166 A. 2d 360,. 89 A. L. R. 2d 612.) It has generally been held that the vote of a council or board member who is disqualified because of interest or bias in regard to the subject matter being considered may not be counted in determining the necessary majority for valid action. There are many cases cited in the annotation in 42 A. L. R. 698 in support of this principle. It is also the rule that where the required majority exists without the vote of the disqualified member, his presence and vote will not invalidate the result and further that a majority vote need not be invalidated where the interest of a member is general or of a minor character. (*Beale v. City of Santa Barbara*, 32 Cal. App. 235, 162 Pac. 657; *Corliss v. Village of Highland Park*, 132 Mich. 152, 93 N. W. 254, adhered to on rehearing 132 Mich. 159, 95 N. W. 416; 56 Am. Jur. 2d, Municipal Corporations, Etc. Section 172.)

The difficult problem which is often presented in conflict of interest cases is in determining whether or not the personal interest of the commissioner or board member is of a nature justifying disqualification to act. Usually this is a question to be determined under the peculiar facts and circumstances of the particular case presented to the court for determination.

A question of disqualification similar to that presented in the case at bar arose in *City of Topeka v. Huntoon*, 46 Kan. 634, 26 Pac. 488. The facts of that case were that in 1890 the mayor and council of the city of Topeka passed an ordinance creating and establishing a sewer district, defining the territory thereof, providing for a complete sewer district therein, and providing for the manner of construction and payment thereof. The real estate situated in the sewer district was appraised, estimates of the cost of the system were obtained, and several proposals for the construction work were received. The city officers were about to enter into a contract for the construction of the sewers. The plaintiff Joel Huntoon, who was the owner of real property within the sewer district, brought an action for an injunction. Along with other things he complained of the fact that certain members of the city council owned tracts of land which were to be included within the sewer district and that this constituted fraud and in effect a conflict of interest which invalidiated all of the proceedings in the city council to establish the sewer district and to construct the sewer. The district court granted an injunction on the theory that each

commissioner who owned land which was to be included in the sewer district had a personal interest in the proposed ordinance which disqualified him from voting and therefore the resolutions setting up the sewer system were invalid. The basis of the holding of the district court was G. S. 1889, Section 653, which made it unlawful for the mayor or a member of a city council who had a pecuniary interest, direct or indirect, in any question submitted or proceeding upon which such officer should be called upon to vote, to act officially, with intent to gain any profit or advantage. On appeal this court reversed the trial court and dissolved the injunction. In the opinion it was pointed out that if the theory of the plaintiff was correct as applied to the extent claimed this would practically disfranchise every member of a city council who owned city property. After citing a number of cases this court concluded that it could not say that the councilmen were disqualified by the reason of the fact that some of their property was included in and some excluded from the sewer district. The essence of the decision is that there was no showing that any member of the city council had a pecuniary interest adverse to the city of Topeka which he represented.

As pointed out heretofore in the case at bar the claim of disqualification of the urban renewal commissioners and the city commissioners arises from the specific statute, K. S. A. 17-4758, which is quoted in full above. The first paragraph of the statute deals with public officers who voluntarily *acquire* an interest in property included or planned to be included in an urban renewal project. This paragraph is not applicable here since all of the property interests of the various commissioners were owned long prior to the beginning of the urban renewal program in Parsons. The second paragraph, however, might reasonably be applicable since it is directed toward public officers who own or control property included or planned to be included in any urban renewal project.

When a close analysis of paragraph two of the statute is made it is clear that before a public officer is disqualified two elements are necessary: (1) He must own, or within the preceding two years have owned, an interest in property included or planned to be included *in any urban renewal project.* (2) Such officer is precluded from participating in any action of his board "affecting such property."

The term "Urban Renewal Project" is specifically defined in K. S. A. 17-4760 (*j*) to include "undertakings or activities of a municipality in an urban renewal area for the elimination and for the prevention of the development or spread of slums or blight, and may involve slum clearance and redevelopment in an urban renewal area, or rehabilitation or conservation in an urban renewal area, or any combination or part thereof in accordance with the urban renewal plan." In K. S. A. 17-4760 (*m*) the term "Urban Renewal Area" is defined as "a slum area or a blighted area or a combination thereof which the local governing body designates as appropriate for an urban renewal project." We have concluded that the conflict of interest statute, K. S. A. 17-4758, disqualifies a commissioner only where the property interest of the commissioner exists in property included or planned to be included in a specific urban renewal project and does not apply where the commissioner owns property in the general urban renewal area not included within the specific urban renewal project upon which action is being taken. It seems obvious to this court that there may be a number of specific urban renewal projects which are developed from time to time under the general urban renewal plan. The disqualification is not a blanket disqualification covering *all* actions of a city commissioner or urban renewal commissioner who owns property in the urban renewal area. The disqualification is limited to actions where the officer or employee has an interest in property which is included or planned to be included in the specific urban renewal project under consideration. Until there is a specific urban renewal project to be voted on the statute does not come into play.

In the case at bar the record does not disclose that any city commissioner or urban renewal commissioner participated in voting on any urban renewal project in which he owned an interest in property included or planned to be included in the specific urban renewal project under consideration. The vote of City Commissioner Combs when he voted to ratify the previous actions of the city commission approving the core area project would be subject to question since a corporation in which he owned stock had owned real estate within the project area within the past two years. But this vote would not affect the validity of the original vote on the project.

The appellants in this case have relied upon *Wilson v. Iowa City*, 165 N. W. 2d 813. In *Wilson* the Supreme Court of Iowa had

before it a statute which was practically identical with K. S. A. 17-4758. There is language in this Iowa case which might well justify a court in taking the position that an urban renewal commissioner or city commissioner owning property within the general urban renewal area is disqualified from participating in the voting on a resolution establishing an urban renewal project even though the property of such commissioner was not included within the specific urban renewal project area being voted on. The decision in the *Wilson* case was handed down by the Supreme Court of Iowa on March 11, 1969. We note that following this decision the legislature of Iowa took immediate action to amend the conflict of interest statute effective April 26, 1969, and thereby nullified the *Wilson* decision the following month after it was rendered. This result was accomplished by the legislature defining the wording "action affecting such property" to include only that action directly or specifically affecting such property as a separate property but not to include any action, any benefits of which accrue to the public generally or which affects all or a substantial portion of the properties included or planned to be included in such a project.

We believe that the interpretation of K. S. A. 17-4758 which we have adopted is sound and is consistent with the rationale contained in *City of Topeka v. Huntoon*, supra. We adhere to the rule that members of a public board are disqualified to vote as such on proposals on which they have a prime interest adverse to the municipality they represent. This rule should not be applied, however, under the circumstances presented in the case before us. We hold that K. S. A. 17-4758 is not applicable to disqualify any of the urban renewal commissioners or the city commissioners in acting upon the resolutions complained of by the appellants in this case.

The other points raised on this appeal involve the claim that the urban renewal board acted arbitrarily and capriciously in establishing and developing the urban renewal program in Parsons and that the city commissioners acted arbitrarily and capriciously in approving the same. The district court made findings of fact that neither the city commissioners nor the urban renewal commissioners were guilty of fraud, bad faith, or abuse of discretion in finding and determining that slum and blight existed in the downtown area and in finding that the taking of the appellants' property pursuant to the urban renewal plan was for a valid planning

purpose. The trial court further found that it would be unjust and inequitable to enjoin the completion of the program in view of the great sums of money already expended for the development of urban renewal, the demolition of many buildings, the relocation of utility lines and streets, and the displacement of numerous families, individuals and businesses. We do not believe that it would serve any useful purpose to set forth with specificity the evidence in this case which supports the findings of the trial court. We recognize that the evidence was in conflict, especially in regard to the physical condition of the appellants' building. We think it sufficient to hold that the findings and conclusions of the trial court are adequately supported by substantial competent evidence.

For the reasons set forth above the judgment of the court below is affirmed.